## SHOEMAKER v ELECTRIC AUTO-LITE CO.

Ohio Appeals, 1st Dist, Hamilton Co

No 6057. Decided Jan 12, 1942

B. Wm. Heidkamp, Cincinnati, and Stanley A. Silversteen, Cincinnati, for appellee.

Leo J. Brumleve, Jr., Cincinnati, and Wm. J. Higley, Cincinnati, for appellant.

### OPINION

By ROSS, J.

This is an appeal on questions of law from a judgment of the Court of Common Pleas of Hamilton County in favor of the plaintiff in a common law action by an employe against his employer for damages, sought as compensation for an injury caused by the negligence of such employer in not providing a safe place for such employe to work.

In his petition plaintiff states that

552

his employment with the defendant required him to stand over tanks containing an "acid chemical solution", that he was compelled to inhale and breathe "noxious and poisonous fumes emanating from the acid solution" in the tanks, that as a result of this, on September 4th, 1937, he became suddenly and violently ill, and a short time thereafter suffered hemorrhages from the lungs and was forced to cease work until September, 1938, that he then returned to work, was soon again compelled to cease work by reason of hemorrhages, "that he was again incapacitated until a few recent weeks" when he returned to "light work, and that as a result of breathing and inhaling the aforesaid acid fumes, he has been disabled as aforesaid, still suffers from lung hemorrhages" and can engage in no occupation requiring any physical effort.

Plaintiff further states "that prior to September, 1937 he had been a strong healthy person" and had never before said date suffered from lung hemorrhages.

Plaintiff states that his injuries were due to the negligence of the defendant, in that he was not furnished a safe place to work, in violation of §871-16 GC, that the defendant failed to advise plaintiff of the dangerous consequences incident to his employment and that he had no knowledge of the menace to his health incident to such occupation.

The plaintiff complains also that defendant failed to furnish masks, sufficent safeguards, sufficient ventilation.

The answer contains three defenses, the first, the statute of limitations, in that plaintiff was not employed in its plating department after October, 1936. The second defense is, in effect, a claim of assumption of risk, and the third defense is contributory negligence. These three specific defenses were preceded by a general denial.

A reply was filed denying the new matter contained in the answer.

The trial resulted in a verdict in favor of the plaintiff. Judgment was entered on the verdict after the overruling of a motion for new trial duly filed, and motion non obstante.

The first serious objection to the judgment tendered by the defendant is that the plaintiff has mistaken his remedy, that he should have made application to the Industrial Commission for compensation due to an occupational disease. The pertinent statute is §1465-68a GC, which provides compensation for injury due to occupational disease, and, among those diseases for which compensation is awarded is:

"19. Chrome ulceration of the skin or nasal passages. Any industrial process involving the use of or direct contact with chromic acid or bichromates of ammonium, potassium or sodium or their preparations."

The evidence in this case shows that the plaintiff was exposed to fumes from a chromic acid solution used in a plating process by the defendant.

The contention of the plaintiff is that his cause of action is not based upon injury to the "nasal passages", but for injury to his lungs. The petition bears out his contention. The evidence indicates that prior to the date mentioned in the petition as the time when his injury to the lungs became effective and apparent, he had difficulty in breathing and upon complaint was transferred from the plating room to another department of defendant's industry, but that this employment required plaintiff from time to time to enter the plating room, although not to operate the tanks or come in immediate and direct contact with the fumes proceeding therefrom, except as they were generally prevalent in the room in which the tanks were located.

While it seems obvious that plaintiff could have received compensation under the Workmen's Compensation Act for all the consequences due to inhaling chromic fumes, although initiated in the nasal passages, he also had the right to sue for damages due to injury suffered from an occupational disease not listed in the schedule contained in

§1465-68a GC. **Triff, Admx. v National Bronze & Aluminum Foundry Co., 135 Oh St 191.** It is the claim of plaintiff that this he has done. The petition is somewhat ambiguous upon this point. He alleges contact with the fumes from the tanks prior to September, 1937, but states that prior to 1937 he had been a strong healthy person and at no time prior thereto suffered hemorrhages from the lungs. Giving him the benefit of every reasonable intendment from his allegations, it must be inferred that any injury received of which complaint is made, was received subsequent to September, 1937.

Now the difficulty with the position taken by plaintiff is that the evidence clearly shows that plaintiff did suffer some injury to the nose and throat by reason of exposure to the fumes in 1936. Upon recommendation of the company physician, the plaintiff was removed from operation of the tanks and put in another department, going occasionally into the tank room. But he cannot rely upon the previous injury because of the operation of the statute of limitations. If the early inhaling and breathing of the fumes of which plaintiff complains in his petition were not the cause of his later difficulty, some other cause must be assigned and proved. The evidence does not sustain the plaintiff's contention of any injury subsequent to September, 1937, independent of previous injury, which is shown to be the proximate cause of the hemorrhages in the lungs. Again, plaintiff certainly knew in September, 1937 that the acid fumes were injurious, for while he disclaims his previous contact as a basis for the instant cause of action, he did complain of their action upon him. So that he did know of their effect and cannot now claim that he did not.

The petition is drawn and the theory of the plaintiff is predicated upon a catch-all basis.

He seeks to avoid the protection given the employer by the Workmen's Compensation Act, with which the defendant had fully complied, and in doing so, plaintiff excludes the obvious proximate cause of the injury from which he now suffers. His medical evidence is wholly speculative and hypothetical. The physician upon whom he relies never even examined him. His evidence is the pyramiding of inferences.

To claim that the occupational disease mentioned in the statute is limited to effect upon the nasal passages alone is a too stringent construction of a statute, required to be liberally construed in favor of the employe. In the case of **Industrial Commission of Ohio v Weigandt, 102 Oh St 1,** the 4th paragraph of the syllabus is:

"The statute is intended to provide a speedy and inexpensive remedy as a substitute for previous unsatisfactory methods, and should be liberally construed in favor of employes."

No court would deny an employe compensation for injuries, merely because such injury failed to stop with the passages in the nose, but continued down those passages into the lungs. All natural consequences of the initiated injury would be taken into consideration in awarding compensation for such occupational disease.

Again, the plaintiff relies upon the negligence of the defendant in not providing a safe place to work under the provision of §871-16 GC. This statute provides no specific requirements as to industries employing chromic acid. It is stated:

"No employer shall require, permit or suffer any employe to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe, and no employer shall fail or neglect to do every other thing reasonably necessary to protect the life, health, safety and welfare of such em-

ployes or frequenters; and no such employer or other person shall hereafter construct or occupy or maintain any place of employment that is not safe."

The record is silent as to what is a safe place for the use of chromic acid —what are proper "safety devices, and safeguards", or what are "proper methods and processes", which will render a plant in which chromic acid is used a safe place in which an employe may work.

What would constitute a safe place a century ago would today be considered a death trap. Comparative contemporary standards of  safety equipment are necessary evidence in order that a jury may properly judge whether or not the defendant has been negligent in failing to do what a reasonably careful employer would do in complying with the requirements of the statute that he furnish a "safe" place for the employe to work. The rule laid down in **Englehardt, etc. v Phillipps, etc., 136 Oh St 73**, is here applicable. Nothing appears in the record indicating what are the usual safeguards of the industry in question.

By the statute law of the state, employers are required to contribute to an insurance fund or are made self insurers. The law permits recovery of award of compensation for accident and occupational disease, wholly independent of fault on the part of the employer or employe. The employer is deprived of his common law defenses, and in exchange his liability is limited to the premiums required to be paid, or in case of self insurers, to the statutory limit of award by the Commission. The employee is deprived of his common law action for negligence, but receives the right to compensation for injury and disease, wholly independent of his own or his employer's negligence. His only limitation is that he must not suffer from a self-inflicted injury. While the common law action for disease not covered by the statute is still retained

by the employe. **(Triff, Admx. v National Bronze & Aluminum Foundry Co., 135 Oh St 191**, supra), where it is covered, the remedy of the employe is solely under the statute. In the instant case, the employe had a plain remedy for all the injury he suffered, both direct and consequential. He chose to rely upon his common law rights, as he had a right to do, but he assumed the burden of showing disease due to the negligence of his employer, and incident to and caused by his occupation. In the latter task, he wholly failed.

Judgment reversed, and judgment must be here rendered for the defendant.

MATTHEWS, PJ. and HAMILTON, J., concur.