FEICHTNER, Appellant,

v.

CITY OF CLEVELAND et al., Appellees.

[Cite as *Feichtner v. Cleveland* (1994), 95 Ohio App.3d 388.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 65483.

Decided May 23, 1994.

*Joseph L. Coticchia,* for appellant.

*Malcolm C. Douglas,* Assistant Director of Law, for appellee city of Cleveland.

*Rhoa, Follen & Rawlin Co., L.P.A.,* and *Albert J. Morhard,* for appellee Bradley Construction Co., Inc.

*Richard R. Kuepper,* for appellee C.A. Agresta Construction Co.

*Weston, Hurd, Fallon, Paisley & Howley, John W. Ours* and *Cecil Marlowe,* for appellee Cook Paving & Construction Co.

*Thomas M. Shaughnessy,* for appellee Eriehouse Lounge.

*Robert F. Linton, Jr.,* for appellee Guy Trinetti & Sons, Inc.

*Ronald D. Jackson, pro se.*

*Gallagher, Sharp, Fulton & Norman, Alton L. Stephens, Jeffrey R. Sadlowski* and *John T. Murphy,* for appellee Kenmore Construction Co.

---

NAHRA, Chief Judge.

Plaintiff-appellant Roland C. Feichtner appeals from the trial court's order which granted summary judgment to six of the defendants in his wrongful death action. The facts relevant to this appeal are set forth below.

On the night of April 13, 1991, at approximately 11:15 p.m., appellant and his wife were in their vehicle proceeding south on Interstate 77 ("I–77") in the city of Cleveland. I–77 was at the time being resurfaced by Kenmore Construction Company ("Kenmore"). In order to facilitate the particular portion of the work it was doing at that time, Kenmore had diverted by construction barrels the existing two southbound lanes for traffic on I–77 to the use of only the extreme right lane and the berm of the highway.

Appellant was driving his vehicle in the berm lane. As he approached the Fleet Avenue exit on the highway, appellant noticed the exit was closed due to construction so he continued to the next one. Thus, appellant's vehicle had to pass under the bridge which carried Fleet Avenue over the interstate. Just before the Feichtner vehicle went under the Fleet Avenue overpass, a fourteen-pound sandstone rock crashed through the passenger-side windshield. Appellant's wife was killed.

The police immediately began an investigation of the death of appellant's wife. As a result of the investigation, it was determined that a man named Ronald Jackson had thrown the rock onto appellant's vehicle from the northwest end of the Fleet Avenue bridge. Although the bridge had a six-foot-high chain link fence on each side, the fence extended only over the regular lanes of interstate traffic below. Jackson had thus thrown the rock from the area of the bridge where the fence ended. The investigation also revealed Jackson had obtained the rock from a construction site approximately twenty-five to thirty yards west of

the Fleet Avenue bridge. In that area beginning at the northern end of the bridge and proceeding northward, pursuant to a contract with appellee Cleveland, appellee Bradley Construction Co., Inc. ("Bradley"), with the aid of appellees C.A. Agresta Construction Company ("Agresta"), Guy Trinetti and Sons, Inc. ("Trinetti") and Cook Paving & Construction Co. ("Cook"), was in the process of repairing and repaving Crete Road at Independence Road. To accomplish their objective, the appellee construction companies had dismantled the original curbing and surface of the two roads. It was a piece of this original curbing which Jackson used to ultimately cause the death of appellant's wife.

Following the police investigation, Jackson was indicted for the murder of appellant's wife and convicted after a court trial. His conviction was affirmed by this court in App. No. 62397.

During the pendency of the criminal action, on September 16, 1991, appellant filed his complaint for wrongful death in the Cuyahoga County Court of Common Pleas. Thereafter, appellant was three times permitted to amend his complaint to add allegations and parties-defendant.[1] In his third amended complaint filed on June 2, 1992, appellant alleged that Cleveland and the five construction companies were negligent and that appellees' negligence was the proximate cause of his wife's death.

For his cause of action in negligence against Cleveland, appellant alleged the following: (1) Cleveland had violated R.C. 723.01[2] by failing to keep the Fleet Avenue bridge "in repair and free from nuisance"; (2) with "notice and knowledge that rocks had been thrown from bridges," Cleveland had failed to install fencing along the entire length of the bridge; (3) although it had entered into contracts "for the repair of the Fleet Avenue Bridge, Cleveland had also violated R.C. 723.01 by failing to inspect and remove construction debris "from the surface of the Fleet Avenue bridge"; and (4) Cleveland had violated R.C. 4101.12[3] by

---

1. Appellant subsequently dismissed his claims or obtained judgment against other defendants in the action and they are not parties to this appeal.

2. R.C. 723.01 states:

"Municipal corporations shall have special power to regulate the use of the streets. Except as provided in section 5501.49 of the Revised Code, the legislative authority of a municipal corporation shall have the care, supervision, and control of the public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation, and the municipal corporation shall cause them to be kept open, in repair, and free from nuisance."

3. R.C. 4101.12 states in pertinent part:

"No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employ-

failing to do everything necessary to protect "frequenters" who traveled on I–77 beneath the Fleet Avenue bridge.

For his cause of action in negligence against appellees Trinetti and Agresta, appellant alleged the following: (1) on the date of the incident, Trinetti and Agresta "were under contract to repair and resurface the Fleet Avenue bridge" but failed to remove construction debris "from the surface of the bridge;" (2) appellees "knew or should have known of the foreseeability and likelihood that construction debris would be thrown off the bridge and onto traffic" traveling I–77; and (3) appellees' acts violated R.C. 4101.12.

For his cause of action against appellees Bradley and Cook, appellant alleged as follows: (1) Bradley and Cook were under contract to repair and resurface Independence Road; (2) appellees failed to remove construction debris at the northwest end of the bridge "directly adjacent" to the bridge; thereby, both appellees "created a nuisance" and Bradley breached its contract; (3) appellees "knew or should have known of the inherent hazard" of leaving the debris and of the "foreseeability and likelihood that construction debris would be thrown off the Fleet Avenue bridge" onto I–77 traffic; and (4) appellees' acts violated R.C. 4101.12.

Finally, as to appellee Kenmore, appellant alleged as follows: (1) although Kenmore was under contract with the state of Ohio to repair and resurface the southbound lanes of I–77 below the Fleet Avenue bridge and had shifted southbound traffic onto the berm, Kenmore "failed to extend the screening on the Fleet Avenue bridge over the area of the berm;" (2) Kenmore failed to inform other government authorities of its action and the need for screening on the bridge over the berm lane; (3) Kenmore knew or should have known of the "inherent hazard" of failing to have screening over the berm lane thereby "creating a risk" that construction debris could be thrown from the bridge onto the berm lane; and (4) Kenmore's acts violated R.C. 4101.12.

Appellees answered the complaint, denying liability and setting up several affirmative defenses; appellee Cleveland asserted the defense of immunity.[4] Discovery proceeded in the action. Numerous depositions and other evidentiary

---

ment safe. No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters. * * * "

4. R.C. 2744.02(B)(3) provides:

"Political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivision open, in repair, and free from nuisance, *except that it is a full defense to such liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge.*" (Emphasis added.)

materials were filed in the trial court. Ultimately, appellees filed separate motions for summary judgment.

In their motions, appellees construction companies argued appellant could not sustain his burden of proof with regard to a cause of action in negligence since he could prove neither the existence of a duty nor proximate cause. Appellee Cleveland also argued it was immune from liability pursuant to R.C. 2744.02(B)(3), since maintenance of the Fleet Avenue bridge was the responsibility of the state of Ohio. Appellees all supported their motions with affidavits and other documentary evidence filed in the trial court as required by Civ.R. 56(C).

Appellant filed briefs in opposition to the motions. With regard to appellees construction companies, appellant argued they had failed to take the necessary steps to ensure the protection of the public in connection with their work. Appellant argued appellees Bradley, Agresta, Trinetti and Cook Paving negligently permitted debris to accumulate at the Crete/Independence Road construction site and it was foreseeable that the third party Jackson would pick up this debris and use it to kill appellant's wife. Appellant further argued appellee Kenmore had violated federal highway safety regulations and should have provided temporary screening over the berm lane. As to appellee Cleveland, appellant argued (1) the city was under a duty to inspect the Crete/Independence Road construction site and remove accumulated debris; and (2) the city had notice of a nuisance and was therefore liable pursuant to R.C. 723.01.

The appellees filed reply briefs. Subsequently, the trial court issued an opinion and order granting appellees' motions for summary judgment. The trial court stated that appellant had failed to establish the existence of a duty toward the decedent and, moreover, that Jackson's act of intentionally throwing the rock at appellant's vehicle was "an intervening, superseding cause" of the death. The trial court therefore found that "no negligence of [appellees] was the proximate cause" of appellant's wife's death. Appellant's complaint against these appellees was, accordingly, dismissed.

Appellant has filed a timely appeal from the final judgment issued by the trial court in this case.[5] He appeals only the trial court's order granting appellees' motions for summary judgment, stating the following as his sole assignment of error:

"The trial court erred in granting summary judgment to defendants city of Cleveland; Bradley Construction Co., Inc.; Guy Trinetti & Sons, Inc.; C.A. Agresta Construction Company; Cook Paving & Construction Company; and

---

5. See, e.g., *Wise v. Gursky* (1981), 66 Ohio St.2d 241, 20 O.O.3d 233, 421 N.E.2d 150; cf. *Noble v. Colwell* (1989), 44 Ohio St.3d 92, 540 N.E.2d 1381.

Kenmore Construction Company because genuine issues of material facts exist relating to these defendants."

Appellant presents ten propositions to support his assignment of error. Most of these propositions simply restate the arguments appellant made against appellees' motions for summary judgment in the trial court. Essentially, appellant argues the evidence before the trial court demonstrated genuine issues of material fact existed as to whether appellees owed his decedent a duty and whether appellees breached this duty. Since appellant's arguments find no support in the record, this court does not agree.

■ Summary judgment is a procedural device to terminate litigation and avoid a formal trial where there is nothing to try. *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 24 O.O.3d 1, 433 N.E.2d 615. In this case, appellant alleged the death of his wife was proximately caused by appellees' negligence.

■ A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. When the defendants, as the moving parties, furnish evidence which demonstrates the plaintiff has not established the elements necessary to maintain his negligence action, summary judgment is properly granted in favor of defendants. *Keister v. Park Centre Lanes* (1981), 3 Ohio App.3d 19, 3 OBR2d, 443 N.E.2d 532.

"As to the elements of a cause of action in negligence it can be said that '[i]t is rudimentary that in order to establish actionable negligence, one must show the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom.' [Citations omitted.]

"Thus, *the existence of a duty is fundamental* to establishing actionable negligence. ' * * * If there is no duty, then no legal liability can arise on account of negligence. Where there is no obligation of care or caution, there can be no actionable negligence.' (Footnotes omitted.) 70 Ohio Jurisprudence 3d (1986), 53–54, Negligence, Section 13. Only when one fails to discharge an existing duty can there be liability for negligence. See *Di Gildo v. Caponi* (1969), 18 Ohio St.2d 125, 127, 47 O.O.2d 282, 283, 247 N.E.2d 732, 733." (Emphasis added.) *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 142, 539 N.E.2d 614, 616.

A review of the evidence before the trial court in this case leads to the conclusion appellant did not establish the elements necessary to maintain his negligence action. The evidence reveals appellees owed no special duty toward appellant's wife and, furthermore, any negligence on their part was not the proximate cause of her death.

That conclusion is supported by a review of the Ohio Supreme Court's opinion in *Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.* (1989), 45 Ohio St.3d 171, 543 N.E.2d 769, and earlier opinions of this court. *Ruhlin* is particularly applicable to this case because of the similarity of certain facts.

In *Ruhlin,* a construction company had undertaken repairs of the Lorain–Carnegie bridge in Cleveland. The court noted that "[f]rom the very beginning of the project," Ruhlin was aware of "severe theft and vandalism problems," including specific instances of vandals throwing construction materials off the bridge. In response, Ruhlin erected chain-link barbed wire fences and hired security guards for the site. When work on the project was shut down for the winter, Ruhlin removed its heavy equipment "for security reasons." However, Ruhlin left a quantity of construction materials on the bridge, stopped posting security guards, and replaced the barbed wire fencing with a simple barricade and a snow fence.

Over the winter, Federal, which occupied a building directly beneath the construction area, suffered significant damage to its building from vandals throwing Ruhlin's construction materials off the bridge. Federal instituted an action against Ruhlin; however, eventually, the trial court granted Ruhlin's motion for a directed verdict with a finding that Ruhlin owed no duty to Federal. This court's reversal of the trial court's order was subsequently affirmed by the Supreme Court, which initially noted as follows:

"*Ordinarily, there is no duty to control the conduct of a third person* by preventing him or her from causing harm to another, except in cases where there exists a special relationship between the actor and the third person which gives rise to a duty to control, or between the actor and another which gives the other the right to protection. [Footnote and citations omitted.] Thus, liability in negligence will not lie *in the absence of a special duty owed* by a particular defendant. [Citations omitted.]

" * * * *

"We recognize that there is no common-law duty to anticipate or foresee criminal activity. [Footnote and citations omitted.] Thus, *the law usually does not require the prudent person to expect the criminal activity of others.* As a result, *the duty to protect against injury caused by third parties,* which may be imposed where a special relationship exists, *is expressed as an exception to the general rule of no liability.*" (Emphasis added.) *Id.,* 45 Ohio St.3d at 173–174, 543 N.E.2d at 772–773.

The existence of such a "special" duty depends on the foreseeability of the injury. *Id.; Jeffers v. Olexo, supra; Menifee v. Ohio Welding Products, Inc.*

(1984), 15 Ohio St.3d 75, 15 OBR 179, 180–181, 472 N.E.2d 707, 710; *Reitz v. May Co. Dept. Stores* (1990), 66 Ohio App.3d 188, 191, 583 N.E.2d 1071, 1073–1074.

This court has held the foreseeability of criminal acts will depend upon the *knowledge* of the defendant-business, which must be determined from the totality of the circumstances. *Id.* at 192–193, 583 N.E.2d at 1074–1075. Only when the totality of the circumstances are "somewhat overwhelming" will a defendant-business be held liable for the criminal acts of a third party. *Id.*; see, also, *Jane Doe v. Sys. Parking, Inc.* (1992), 79 Ohio App.3d 278, 607 N.E.2d 88; *Calmes v. Goodyear Tire & Rubber Co.* (1991), 61 Ohio St.3d 470, 474, 575 N.E.2d 416, 419–420. The rationale for this rule is stated thus:

"In delimiting the scope of duty to exercise care, regard must be had for the probability that injury may result from the act complained of. No one is bound to take care to prevent consequences, which, in the light of human experience, are beyond the range of probability." *Gedeon v. East Ohio Gas Co.* (1934), 128 Ohio St. 335, 338, 190 N.E. 924, 926. See, also, *Jeffers v. Olexo, supra,* 43 Ohio St.3d at 143, 539 N.E.2d at 617.

It was this standard which led the Supreme Court in *Ruhlin* to conclude a special duty was owed by Ruhlin to Federal under the circumstances of that case. The court stated the rationale of its decision thus:

"[I]f a person exercises control over real or personal property and such person *is aware* that the property is subject to *repeated* third-party vandalism, *causing injury* to or affecting parties off the controller's premises, then a special duty *may* arise to those parties whose injuries are reasonably foreseeable, to take adequate measures under the circumstances to prevent *future* vandalism." (Emphasis added.) *Id.,* 45 Ohio St.3d at 177, 543 N.E.2d at 775.

In this case, however, no such "overwhelming" circumstances exist. Appellant presented no evidence from which to conclude that an exception to the general rule of no liability had been established which created a special duty on the part of appellees.

The evidence demonstrated the construction debris generated by the companies working on the Crete/Independence Road site was *not* on the Fleet Avenue bridge as alleged in appellant's complaint. Rather, it was on a site at least twenty-five to thirty yards away from the bridge. The evidence further demonstrated that, contrary to the allegations of the complaint, prior to the incident there were *no* documented reports that persons were taking the construction debris and then transporting it to the bridge to throw it off. The only evidence on this point was a statement made in his deposition by one of the company owners that such a thing occurring was within the realm of *possibility.* This was

insufficient to create a special duty on appellee's part. *Reitz v. May Co. Dept. Stores, supra.*

The evidence also proved appellee Kenmore's construction project was totally unrelated to the Crete/Independence Road project and the use of the berm lane by traffic only temporary. It also demonstrated Kenmore complied with all applicable safety regulations. Moreover, the fencing on the bridge was sufficient to protect the normal lanes of traffic.

Appellees' evidence proved the bridge was maintained by the Ohio Department of Transportation. Neither Kenmore nor Cleveland, therefore, had either jurisdiction or control over the placement of the fencing on the bridge. Again, prior to the night of appellant's wife's death, there were no documented complaints of incidents creating danger to cars traveling in the berm lane.

Thus, there was no demonstration by appellant that a "nuisance" existed at the construction sites or that either the city's streets or the Fleet Avenue bridge were unsafe for normal use. Rather, the evidence demonstrated Cleveland had no responsibility to maintain the Fleet Avenue bridge and was therefore immune from liability pursuant to R.C. 2744.02(B)(3).

Furthermore, there was no evidence that any of the appellees failed to comply with any safety regulations. Therefore, no liability in tort on this basis was established. See, *e.g., Shoemaker v. Elec. Auto–Lite Co.* (1942), 69 Ohio App. 169, 23 O.O. 584, 41 N.E.2d 433; *McCoy v. Ohio Dept. of Rehab. & Corr.* (1986), 31 Ohio App.3d 228, 31 OBR 511, 511 N.E.2d 398.

Appellant makes an additional argument that the trial court erred in overruling his motion for extension of time to obtain discovery from Kenmore. A review of the record, however, also fails to support this argument.

The trial court has broad discretion in controlling the discovery process. *Stegawski v. Cleveland Anesthesia Group, Inc.* (1987), 37 Ohio App.3d 78, 523 N.E.2d 902. Absent an abuse of that discretion, an appellate court may not overturn the trial court's ruling on discovery matters. *Vinci v. Ceraolo* (1992), 79 Ohio App.3d 640, 607 N.E.2d 1079. There is no indication the trial court abused its discretion in this case.

The trial court permitted appellant to amend his complaint at least three times. Appellant filed his last version on June 6, 1992, approximately three weeks after the original date the case was set for trial. Prior to filing this last version, moreover, appellant had notice the case had been reset for trial in December. At that time, appellant had stipulated to the trial court's newly imposed discovery dates. After filing his final amended complaint, appellant then filed a request for extension of time to obtain discovery from the new parties-

defendant he had added. His affidavit in support of the request, however, made only general assertions of need. In view of the length of time the discovery process had been in progress, appellant's agreement with the new discovery dates, and the patience the trial court had shown throughout the proceedings, appellant cannot demonstrate the trial court abused its discretion in overruling his motion. *Gates Mills Invest. Co. v. Pepper Pike* (1978), 59 Ohio App.2d 155, 13 O.O.3d 191, 392 N.E.2d 1316; *Ramsey v. Edgepark, Inc.* (1990), 66 Ohio App.3d 99, 583 N.E.2d 443.

In summary, therefore, a review of the record leads to the conclusion the trial court did not err in its rulings in this case. A review of the evidence demonstrates appellant failed to prove the allegations made in his complaint against appellees. Since appellant did not maintain his burden to provide evidence on every element of his cause of action in negligence, appellees' motions for summary judgment were properly granted. *Wing v. Anchor Media, Ltd. of Texas, supra; Keister v. Park Centre Lanes, supra.*

As the court observed in *Jeffers v. Olexo, supra,* 43 Ohio St.3d at 144, 539 N.E.2d at 618;

"Decedent's death was without question a tragedy. 'When such a tragedy happens, the first reaction, quite naturally, may be to cast about for fault or some explanation of why the tragedy occurred. * * *' *Elliott v. Nagy* (1986), 22 Ohio St.3d 58, 61, 22 OBR 77, 79, 488 N.E.2d 853, 855. However, when the ' " * * * intervening events are of such a kind that no foresight could have been expected to look out for them, the defendant is not to blame for having failed to do so. * * *" ' " *Id.* at 61, 22 OBR at 79, 488 N.E.2d at 856, quoting from Holmes, The Common Law (1881), at 92.

Accordingly, appellant's assignment of error is overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

JAMES D. SWEENEY and DAVID T. MATIA, JJ., concur.