JOURNAL ENTRY AND OPINION
This is an appeal from an order of Judge Christine McMonagle granting summary judgment in favor of appellees Pat and Miles Henderson on the personal injury and consortium claims of appellants Betsy and Harry Williams that resulted from Mrs. Williams' fall down a stairway. Mrs. Williams claims, as a social guest, her hosts breached their duty to install a handrail on the third floor stairway, failed to warn her of its absence, and that the hazardous condition she encountered was not open and obvious. We disagree and affirm.
From the record we learn that on November 9, 1997, the Williamses, and their two sons, then six and two and one-half years of age, went to the Hendersons' 1920's era Shaker Heights home as they had on other occasions. Shortly after arriving, the Williams boys sought permission to play with the Hendersons' boys in a finished third-floor playroom. Everyone agreed, the children left, and the adults remained on the first floor.
After approximately one-half hour Mrs. Williams went to check on the children although she had never been beyond the first floor of the Hendersons' home. She walked up the stairway to the second floor, that had a handrail and, as she started up the flight of wooden stairs to the third floor, she called up to her children. When they did not immediately respond, she continued up the stairs and called out again. By the time she neared the third floor, all the children appeared at the top of the stairs and she ascertained that all was well.
Mrs. Williams turned to go down the stairs, lost her balance and tumbled headfirst down the stairwell, slamming her shoulder into the doorframe. The resulting injury required surgery that same evening and has left Mrs. Williams with a partial disability to her arm and shoulder. She did not remember the number of steps she had descended before falling, did not know what caused the fall, and was not aware that the stairway did not have a handrail.
On June 23, 1998, the Williamses filed their complaint against Mr. and Mrs. Henderson alleging five counts of negligence. With leave of court, they filed an amended complaint on November 5, 1998, naming the City of Shaker Heights as an additional, defendant and alleging that Shaker Heights failed to enforce handrail code requirements. Shaker Heights filed an answer and crossclaim against the Hendersons claiming indemnification or contribution and the Hendersons filed their answer to the complaint and the crossclaim of Shaker Heights, and filed a crossclaim against Shaker Heights seeking indemnification or contribution. On January 15, 1999, Shaker Heights moved for judgment on the pleadings while the Hendersons filed a motion for summary judgment on February 19, 1999.
Richard Van Petten, the Williamses' architectural expert who inspected the Hendersons' home, was deposed and stated his opinion that the third floor of the home had been finished at the time it was built in the 1920's and that no handrail was required by the Shaker Heights building code at that time. When asked about the tread to riser relationship he stated "nothing else about that stair that is inherently unsafe or different than what we might expect to find in a similar stair in another private residential structure." He contended, however, that the lack of a handrail was unsafe, admitted there was no evidence that Shaker Heights ever issued a citation for lack of a handrail on the third floor stairway to either the Hendersons or the previous owners of the house, and noted that the 1992 point-of-sale inspection by Shaker Heights, before the Hendersons purchased the home, did not cite the lack of handrail on that flight of stairs as a housing code violation.
William E. Hanson, the Director of Housing Inspection for Shaker Heights, also reviewed the 1992 point-of-sale inspection and noted, through affidavit, that "departmental policy stipulated that a citation mandating the installation of a handrail was noted only if there was evidence that a handrail had been removed." Given the lack of citation at the point-of-sale inspection, Hanson concluded that "the inspector found no handrail and no evidence of one having been there," and averred that, "[i]f no handrail was present in the stairwell between the second and third floors at the time the Hendersons purchased the home, the Housing Code of the City of Shaker Heights does not require them to install such a handrail." James P. Ziegler, the Shaker Heights Housing Director of the Building Department, acknowledged at his deposition that "a handrail would enhance the safety of that stairwell."
Through affidavits, Mr. and Mrs. Henderson averred that the flight of stairs between the second and third floors did not have a handrail at the time of purchase; that they made no alterations to the stairwell or adjacent areas since they purchased the home in 1993; and that from the time they purchased the home until Mrs. Williams' fall, they had used the stairs without incident and without any knowledge of any dangerous condition the stairs may have presented. On April 2, 1999, the Williamses filed a brief in opposition based upon lack of ordinary care.
Without opinion, the judge granted the Hendersons' motion on a half-sheet journalized on April 7, 1999. The Williamses filed a dismissal without prejudice on their claim against Shaker Heights on April 13, 1999. Through an April 16, 1999 order, the judge found Shaker Heights' motion for judgment on the pleadings moot because the order granting summary judgment resolved all claims between the parties.
The Williamses' single assignment of error states:
 WHETHER THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED TO THE PREJUDICE OF, PLAINTIFF-APPELLANT [sic] BY GRANTING, DEFENDANTS'-APPELLEES' MOTION FOR SUMMARY JUDGMENT.
They contend that reasonable minds could conclude that the injury caused by the absence of a handrail resulted from the Hendersons' lack of ordinary care because they breached their duties to have a handrail or to warn of the lack of a handrail on the staircase leading to the children's play area on the third floor. Moreover they submit that the lack of handrail does not comply with building codes which mandate that handrails be provided on at least one side of the stairway of three or more risers. Additionally, they argue that Mrs. Williams did not notice the dangerous lack of a handrail because she was distracted when her children did not respond to her call and she was concerned for their safety.
In response, the Hendersons assert that evidence that the lack of a handrail was a dangerous condition or that they considered it as such; 2) that the lack of handrail in the stairwell to the third floor was open and obvious and; 3) that there is no evidence of proximate cause because Mrs. Williams did not know what caused her to fall. They conclude they are not liable for her injuries and the judge correctly granted summary judgment in their favor.
This Court reviews the grant of summary judgment de novo, applying the same standard as that applied by the trial judge. Hodge v. City of Cleveland (Mar. 9, 2000), Cuyahoga App. No. 76048, unreported, citing, in part, Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105,671 N.E.2d 241. A judge may grant a motion for summary judgment pursuant to Civ.R. 56(C) when the following elements are satisfied:
 (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 369 N.E.2d 267,274; accord Zivich v. Mentor Soccer Club (1998), 82 Ohio St.3d 367,369-370, 696 N.E.2d 201. The movant cannot satisfy this burden through conclusory assertions that the non-moving party has no evidence to support its case. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, 662, N.E.2d at 273-274. Once the movant has satisfied this burden, the non-moving party assumes a reciprocal burden of showing that a genuine issue of material fact exists for trial. Civ.R. 56(E); Dresher, supra. The non-moving party must satisfy this reciprocal burden by pointing to the same type of evidentiary material of record listed under Civ.R. 56(C). Civ.R. 56(E); Dresher, supra. If the non-moving party fails to satisfy this burden, the judge then may render summary judgment in favor of the movant if such judgment is appropriate. Civ.R. 56(E). Summary judgment is only appropriate when, after viewing the evidence in a light most favorable to the non-moving party, reasonable minds can come to one conclusion and that conclusion is adverse to the non-moving party. Civ.R. 56(C). Temple, 50 Ohio St.2d at 327; Druso,124 Ohio App.3d at 131.
"The existence of a duty is fundamental to establishing actionable negligence, without which there is no legal liability." Adelman v. Timman (1997), 117 Ohio App.3d 544, 549, 690 N.E.2d 1332 citing Jeffers v. Olexo (1989), 43 Ohio St.3d 140, 142, 539 N.E.2d 614, 616-617; Feichtner v. Cleveland, 95 Ohio App.3d 388, 394, 642 N.E.2d 657, 661, appeal not allowed (1994), 70 Ohio St.3d 1476, 640 N.E.2d 848. The parties agree that the duty owed by the Hendersons to Mrs. Williams was that of a host toward a social guest. The duty owed to a social guest is described in paragraphs two and three of the syllabus in Scheibel v. Lipton (1951),156 Ohio St. 308, 102 N.E.2d 453:
 2. A host is not an insurer of the safety of a guest while upon the premises of the host and there is no implied warranty on the part of a host that the premises to which a guest is invited by him are in safe condition.
 3. A host who invites a social guest to his premises owes the guest the duty (1) to exercise ordinary care not to cause injury to his guest by any act of the host or by any activities carried on by the host while the guest is on the premises, and (2) to warn the guest of any condition of the premises which is known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous, if the host has reason to believe that the guest does not know and will not discover such dangerous condition.
The Williamses do not contend that the Hendersons breached their duty to exercise ordinary care to Mrs. Williams by their own acts or through any activity carried on by them while she was on the premises. Rather, they claim that the Hendersons failed to provide a handrail or to warn her of the dangerous condition created by the lack of handrail in the stairwell to the third floor of the home when they knew that placing a play area on that floor encouraged guests to use it. We cannot agree that the Hendersons had a duty to provide the handrail or to issue such a warning.
The Williamses first contend that "common sense," as reflected in current building codes, dictates that a stairway of more than three risers requires a handrail to protect the physical well-being of persons ascending and descending the stairs. This argument fails because the Williamses acknowledge both that the Henderson home was built during the 1920's and that the Shaker Heights Residential Building Code and Ohio Building Officials Association (OBOA) Building Code as adopted in the early 1950's required handrails in only newly constructed residential properties. In any event, the resolution of the question of duty in the present case does not turn upon whether the stairs would have been safer to negotiate with a handrail as "there is no implied warranty on the part of a host that the premises to which a guest is invited by him are in safe condition." Id. at paragraph two of the syllabus. The question turns upon whether one could discover the absence of a handrail in the stairwell.
Before the law will impose upon a social host a duty to warn a guest of a condition "which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous," the host must have knowledge of that dangerous condition. Scheibel, 156 Ohio St. 308 at paragraph three of the syllabus.[1] If we assume, arguendo, that the lack of a handrail is a "dangerous condition," and what the Williamses describe as "common sense" satisfies the "knowledge" element of the second duty outlined in Sheibel, the Williamses also must satisfy the "discovery" element which requires the host to warn the guest "if the host has reason to believe that the guest does not know and will not discover such dangerous condition." Scheibel, 156 Ohio St. 308 at paragraph three of the syllabus. There is no dispute that, until Mrs. Williams' fall, the Hendersons had no incidents concerning the stairs or stairwell with its flat walls covered by print wallpaper.
Under those circumstances the Hendersons would have reason to believe that anyone would have discovered the lack of handrails because the absence of such would have been apparent before one ascended the stairs. Id. at paragraph three; cf. Putnam v. Lynch (Apr. 27, 1992), Wyandot App. No. 16-91-28, unreported (applying open and obvious danger doctrine to affirm summary judgment against invitee where a lack of handrail was apparent). The suggestion that Mrs. Williams was justifiably distracted from noting the condition of the stairwell and the absence of the handrail because her children failed to immediately respond to her call from the second floor doorway does not obviate her obligation to exercise reasonable care to ensure her own well-being. See Orens v. Ricardo's Restaurant (Nov. 14, 1996), Cuyahoga App. No. 70403, unreported. Therefore, the Hendersons had no duty to warn anyone of the absence of a handrail on the flight of stairs to the third floor of their home.
Judgment affirmed.
It is ordered that the appellees recover from appellant their costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
_______________________ JUDGE, ANNE L. KILBANE
ANN DYKE, ADM. JUDGE, CONCURS SEPARATELY;
MICHAEL J. CORRIGAN, J., CONCURS IN JUDGMENT ONLY AND CONCURS IN SEPARATE CONCURRING OPINION.
[1] Cf. Webb v. Smith (Nov. 18, 1998), Summit App. 18859, unreported (An explicit requirement of this second duty is that the host have actual knowledge of the dangerous condition.).