OPINION
{¶ 1} The plaintiffs-appellants, the estate of Jason K. Mathewson, Michael Mathewson, Kimberly Mathewson, and Krista Mathewson ("Mathewsons"), appeal the judgment of the Union County Common Pleas Court granting summary judgment in favor of the defendants-appellees, Robert Decker ("Decker"), Thomas General Contracting, Corp. ("Thomas Contracting"), and Thomas General Trucking Co. ("Thomas Trucking").
 {¶ 2} On May 3, 2004 and as part of his employment with Thomas Contracting, Decker was scheduled to deliver a load of gravel to a construction site located along State Route 191, or Raymond Road ("Raymond Road"), which runs north and south. The construction site was not ready for the delivery when Decker arrived, and the site supervisor asked him to wait. The driveway leading to the construction site was situated in a curve on Raymond Road, so Decker decided to wait at another location. Decker drove north, turned around in a driveway located on the west side of the road, drove south, pulled off to the east side of the road, and parked the dump truck facing south so he could see the construction site.
 {¶ 3} Shortly before 4:00 p.m. and while the dump truck was parked, sixteen year old Jason Mathewson ("Jason") was operating a Ford Contour northbound on Raymond Road. Fifteen year old Cody Gibson ("Gibson") was a passenger in the car. The facts are undisputed that Jason was speeding. In the curve, Jason lost control of the car, which slid into the front of the dump truck. Jason died as a result of injuries sustained in the collision, and Gibson has no memory of the collision.
 {¶ 4} On April 4, 2005, the Mathewsons filed a wrongful death complaint, naming Decker, Thomas Contracting, and Thomas Trucking as defendants. The complaint alleged one count of negligence, one count of negligence per se, and one survivorship claim. The defendants timely filed a collective answer, asserting comparative negligence as an affirmative defense. On October 12, 2005, the defendants filed Decker's deposition, and on November 10, 2005, they filed a motion for summary judgment. On November 13, 2005, the Mathewsons filed a memorandum in opposition to the motion for summary judgment, and the trial court filed its judgment entry granting summary judgment in favor of Decker, Thomas Contracting, and Thomas Trucking on November 28, 2005. The Mathewsons appeal the trial court's judgment asserting the following assignments of error:
The Trial Court erred as a matter of law by failing to findthat Mr. Decker owed a duty of reasonable care to Jason Mathewsonon May 3, 2004.
 The Trial Court erred as a matter of law by failing topreserve the issue of the violation of a duty of reasonable carefor a decision by a trier-of-fact.
 The Trial Court erred as a matter of law by failing to findthat Mr. Decker was parked in violation of applicable Ohio lawand thereby liable under Appellants' negligence per se claim.
 The Trial Court erred as a matter of law by finding thatreasonable minds could not conclude that Mr. Decker's conduct onMay 3, 2004, was the proximate cause of the accident andresultant death of Jason Mathewson.
 {¶ 5} A trial court's grant of summary judgment is reviewed de novo on appeal. Lorain Nat'l Bank v. Saratoga Apts. (9th
Dist. 1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198. Thus, such a grant will be affirmed only when there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law, and "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor." Civ.R. 56(C).
 {¶ 6} The moving party may file its motion for summary judgment "with or without supporting affidavits[.]" Civ.R. 56(A). However, "[a] party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." Mitseff v. Wheeler (1988), 38 Ohio St.3d 112,526 N.E.2d 798, syllabus. Once the moving party demonstrates it is entitled to summary judgment, the burden shifts to the non-moving party to show why summary judgment is inappropriate. See Civ.R. 56(E). If the non-movant fails to respond, or fails to support its response with evidence of the kind required by Civ.R. 56(C), the court may enter summary judgment in favor of the moving party. Id. Otherwise, summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the non-movant. Murphy v. Reynoldsburg,65 Ohio St.3d 356, 360, 1992-Ohio-95, 604 N.E.2d 138.
 {¶ 7} In order to survive a properly supported motion for summary judgment in a negligence action, the non-movant must establish genuine issues of material fact as to whether: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached the duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. See Texler v. D.O. Summers Cleaners (1998), 81 Ohio St.3d 677,680, 693 N.E.2d 271. If a defendant points to evidence illustrating the plaintiff's inability to prove any one of the foregoing elements, the defendant is entitled to judgment as a matter of law. See Feichtner v. Cleveland (1994),95 Ohio App.3d 388, 394, 642 N.E.2d 657.
 {¶ 8} In the first assignment of error, the Mathewsons contend Decker owed a common-law duty to other motorists. In arguing that summary judgment in favor of the defendants was inappropriate, the Mathewsons stated, "Decker either was aware, or should have been aware, that parking within the roadway right-of-way just outside of a curve, facing oncoming traffic, without warning triangles or other safety markers was likely to cause harm to other motorists." The Mathewsons contend that Thomas Contracting had a company policy in effect requiring drivers to use safety triangles when parked along the side of the road, and Decker failed to use the triangles. The Mathewsons contend Decker parked so as to "make it highly improbable that a driver proceeding Northbound would be able to determine if the dump truck was in the Northbound lane of travel." In response, Decker, Thomas Contracting, and Thomas Trucking argue Decker owed no duty to other motorists because he was parked entirely off the road in a private driveway.
 {¶ 9} Whether a duty exists is a question of law for the court's determination. Mussivand v. David (1989),45 Ohio St.3d 314, 318, 544 N.E.2d 265 (citing Wheeling L.E.R. Co. v.Harvey (1907), 77 Ohio St. 235, 240, 83 N.E. 66). "The common-law duty of due care is that degree of care which an ordinarily resonable [sic] and prudent person exercises, or is accustomed to exercising, under the same or similar circumstances." Id. at 318-319 (citing Gedeon v. East Ohio GasCo. (1934), 128 Ohio St. 335, 338, 190 N.E. 924). A person must exercise the "care necessary to avoid injury to others." Id. at 319 (citing 70 Ohio Jurisprudence 3d (1986) 62, Negligence, Section 19). Additionally, the "existence of a duty will depend on the foreseeability of the injury". Id. at 320-321 (citingMenifee v. Ohio Welding Prod., Inc. (1984), 15 Ohio St.3d 75,77, 472 N.E.2d 707). "`The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act.'" Id. at 321 (quoting Menifee, supra at 77 (internal citations omitted)). In this case, we find no common law duty.
 {¶ 10} When Decker arrived at the job site to deliver his load of gravel, he pulled off the side of the road (facing north) into the driveway where he was to deliver the gravel; however, the supervisor informed him the job site was not quite ready for the delivery. Dep. Decker, Robert, Oct. 12, 2005, at 40. The supervisor told Decker to wait in the driveway, but Decker decided to move the truck since the driveway was located in the curve, and he believed it to be an unsafe place to park. Id. at 41-42. Decker pulled out of the driveway, drove north, and backed into a driveway located on the west side of Raymond Road. Id. at 44-47. Decker thought about waiting in that driveway, but changed his mind because it was on a slight hill and "it's dangerous to park on a hill[.]" Id. at 52, 54-55. Decker then drove south and pulled across a driveway located on the east side of the road, which he considered to be the safer place to park. Id. at 54. Decker testified, "[w]ell, in between those two driveways, it was either in the grass, in the ditch — grass ditch, whatever you want to call it — or in a driveway down the street from where the delivery was to be. I chose that other driveway. That way I'm not tearing up no one's yard or anything else, and I'm out of the roadway." Id. at 56:17-23.[1]
 {¶ 11} All the evidence indicates that the truck was completely off the road. Decker testified the truck was completely off the road and estimated the right front tire to be either two or three feet from the pavement. Id. at 60, 80. In his affidavit, Decker stated the truck was completely off the roadway. Def.s' Mot. for Summ. J., Nov. 10, 2005, at Ex. B, ¶ 2-3. Likewise, the defendants supported their motion with the affidavit of David Uhrich ("Uhrich") in which he stated the dump truck was parked off the east side of the road facing south. Id. at Ex. C, ¶ D. The Mathewsons produced Henry Lipian's ("Lipian") affidavit to support their case; however, even Lipian stated the dump truck was parked "[j]ust off the east edge of the paved portion of [Raymond Road]". Pl.s' Memo. in Opp., Nov. 23, 2005, at Ex. 1, ¶ D1. Lipian also opined that:
the dump truck occupied by Robert Decker was completelyobscured by the curve in the road and hill until [Jason] waswithin approximately 560 feet of the dump truck. At the firstpoint of perception, due to the curvature and elevation of[Raymond Road], it would have been highly improbable for thedriver of the Ford Contour to determine if the dump truck was inhis lane of traffic or not.
Id. at ¶ E.
 {¶ 12} The evidence is also undisputed that Decker never received a copy of Thomas Contracting's policies, he never saw a copy of Thomas Contracting's policies, nor was he informed of the policies. Dep. Decker, at 103. As to his training, Decker testified that he spent one day riding around with another dump truck driver who "just more or less told me how the quarry operated." Id. at 103. At the time of the collision, Thomas Contracting apparently had in effect a company policy which stated, "`[w]hen parked along the side of the road, the associate must use safety triangles.'" Id. at 105. However, Decker testified that "you only use safety triangles if you're disabled, and I wasn't disabled until after the accident". Id. Decker testified he did not consider using the safety triangles because the truck was not disabled when he parked. Id. The plaintiffs have not refuted Decker's testimony.
 {¶ 13} Furthermore, we cannot find that a reasonably prudent person would have anticipated injury to passing motorists when that person was parked off the traveled portion of the roadway, regardless of which direction the vehicle was facing. The Ohio Supreme Court has held that "[o]ne might rightfully assume the observance of the law and the exercise of ordinary care by others, and action by him in accordance with such assumption, in the absence of notice or knowledge to the contrary is not negligence." Swoboda v. Brown, 129 Ohio St. 512, 196 N.E. 274,275, paragraph eight of the syllabus. In this case, the facts are undisputed that Jason was operating the Ford Contour at least eleven miles over the posted speed limit. Decker could not have anticipated an injury to a speeding motorist when he parked the dump truck off the traveled roadway.
 {¶ 14} In this case, an ordinarily reasonable and prudent person would have parked in the same manner as Decker under the same or similar circumstances. Decker parked the dump truck in the driveway facing south for several reasons: 1) he determined the driveway was the most safe location to park in comparison to his other options; 2) he did not want to destroy other people's real property by parking on their grass, so he parked entirely on the driveway; and 3) he wanted to see the job site so he knew when to deliver the gravel. Additionally, a reasonably prudent person would not foresee injury to a speeding motorist by parking off the roadway. In this case, we cannot find Decker owed a common-law duty of care to Jason, and the first assignment of error is overruled.
 {¶ 15} In the third assignment of error, the Mathewsons contend that Decker's actions constitute negligence per se because parking the dump truck facing opposite the direction of traffic violates R.C. 4511.69(C). The Mathewsons contend that "highway" has been interpreted so as to include the paved portion of the road, the berm, the shoulder, and the right-of-way. Decker, Thomas Trucking, and Thomas Contracting argue that the Mathewsons have misconstrued the term "right-of-way". The defendants argue that R.C. 4511.01(UU)(2) requires the state or a local authority to control the property subject to the "right-of-way". They argue there is no evidence that the state or a local authority had control of the property where the dump truck was parked at the time of the accident.
 {¶ 16} R.C. 4511.69(C) states "[n]o vehicle or trackless trolley shall be stopped or parked on a road or highway with the vehicle or trackless trolley facing in a direction other than the direction of travel on that side of the road or highway." The term "road" is not defined in the Revised Code; however, "roadway" means "that portion of a highway improved, designed, or ordinarily used for vehicular travel, except the berm or shoulder." R.C. 4511.01(EE). The statute clearly excludes the berm and shoulder from the definition, and as noted above, it is undisputed that the dump truck was entirely off the roadway. However, "highway" has been defined as "the entire width between the boundary lines of every way open to the use of the public as a thoroughfare for purposes of vehicular travel." Id. at (BB). The Mathewsons contend that Ohio courts have included the "right-of-way" in the definition of "highway".
"Right-of-way" means either of the following, as the contextrequires:
(1) The right of a vehicle, streetcar, trackless trolley, orpedestrian to proceed uninterruptedly in a lawful manner in thedirection in which it or the individual is moving in preferenceto another vehicle, streetcar, trackless trolley, or pedestrianapproaching from a different direction into its or theindividual's path;
 (2) A general term denoting land, property, or the interesttherein, usually in the configuration of a strip, acquired for ordevoted to transportation purposes. When used in this context,right-of-way includes the roadway, shoulders or berm, ditch, andslopes extending to the right-of-way limits under the control ofthe state or local authority.
R.C. 4511.01(UU)(1)-(2) (emphasis added).
 {¶ 17} In the context of R.C. 4511.69(C), we cannot find that R.C. 4511.01(UU)(2) applies. On the facts of this case, we do not believe R.C. 4511.69(C) was intended to prohibit parking against the flow of traffic in a location where the road could have been built, but was not. We note the Second Appellate District's decision in Parker v. Copey's Butcher Shop, 2nd Dist. No. 2820, 1992 WL 364618, in which Clark County had enacted a zoning resolution establishing a set back for parking areas along a street. In Parker, the parties apparently produced evidence as to the location of the right-of-way and the butcher shop's paved parking area where the injury occurred. In this case, Decker parked the dump truck on a private driveway, which was apparently intended as a means of ingress and egress from a residence. Therefore, this case is distinguishable from Parker. The third assignment of error is overruled.
 {¶ 18} Having overruled the first and third assignments of error, the remaining assignments of error are moot. The judgment of the Union County Common Pleas Court is affirmed.
Judgment affirmed.
 Shaw, J., concurs.
 Rogers, J., concurs in judgment only.
[1] The two driveways to which Decker refers are the driveway where he turned the truck around and the driveway where he eventually parked.