This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Pennie Graham-Staley, appeals from the decision of the Wayne County Court of Common Pleas, granting summary judgment to appellees, Bogner Construction Company ("Bogner") and Alfred Barto, d.b.a. Barto Decorating, ("Barto"). We affirm.
On January 5, 1999, Ms. Graham-Staley, who was employed by the J.M. Smucker Company ("Smuckers"), was being trained in a position referred to as PC cook. On the day in question, Ms. Graham-Staley had been training in her new position for five hours and was putting ingredients into a mixing bowl when she fell on the floor and injured herself. This was her first day of work since she had returned from her Christmas vacation. In her deposition, Ms. Graham-Staley stated that she had noticed that the floor was slippery earlier in the day and was told by a co-worker that a complaint had been made to the supervisor at Smuckers to remedy the situation.
At the time of the accident, Bogner had been acting as Smuckers' general contractor for several years and had been given a project in July of 1998 to undertake some repair work at the Smuckers plant during a plant shutdown period. As part of the floor repair project, Bogner hired Barto to act as a subcontractor. Barto's job entailed painting the entire floor area of the plant with paint and an aggregate, an abrasive grit substance which made the floor less slippery.
In his deposition, Charles Armbruster, a manager at Smuckers, stated that the plant floors are repainted approximately once every two years and that the wet floors in the plant should not be slippery due to the application of the aggregate. However, Mr. Armbruster acknowledged that, prior to the repainting of the floors in July of 1998, employees had fallen in the cookroom and complained that the floor surface was slippery. Mr. Armbruster explained that, in the process of making jelly, ingredients could fall on the floor and would need to be cleaned up with either water or chemicals. Mr. Armbruster stated that both Bogner and Barto came back at the end of December 1998 to work on the floors following their initial repair work done in July. As was the routine practice of Smuckers, after the floor was redone, Mr. Armbruster personally inspected the work and found that there was aggregate in every area that he looked. Specifically, in his deposition, Mr. Armbruster acknowledged that, while his personal experience would have led him to apply even more aggregate, his inspection led him to believe that the aggregate had been applied in a satisfactory manner.
Richard Stofer, who worked for Bogner prior to his retirement, stated in his deposition that he had met with Mr. Armbruster prior to the July work to discuss Smuckers' job specifications. He stated that Mr. Armbruster gave him job instructions and told him that Smuckers would provide the necessary materials. He also stated that Smuckers had asked both Bogner and Barto to come back at the end of December 1998 to redo part of the work completed in July of that year. Mr. Stofer explained that, as soon as the floor work was done in July, he received a call from Mr. Armbruster during which Mr. Armbruster told him that the floor work completed in July was not satisfactory. However, Mr. Stofer stated that, when Barto got the chance to redo the floors of the plant during the slowdown of the Christmas season, the aggregate was applied evenly over the surfaces of the floor and that he did not receive any complaints from Mr. Armbruster. Mr. Stofer further elaborated that, despite this even application of aggregate, he had been informed by Smuckers that employees had still slipped on the plant floors.
Alfred Barto, the owner of Barto Decorating, testified that his company had an ongoing business relationship with Bogner. When his company agreed to repaint the floors at Smuckers, Barto had not previously done this type of project, but Mr. Barto was assured by a Smuckers maintenance man that he would explain the entire process to Barto before the work was undertaken. Additionally, Mr. Barto stated that the preparatory work, such as washing and cleaning the floors, was completed by Smuckers prior to the paint application. Mr. Barto testified that Smuckers provided the necessary materials for the application of paint. Mr. Barto explained that his company did not get to properly complete their work in July 1998 due to numerous problems which included water and tools spread over the floor as well as interference caused by other people working in the Smuckers plant. Mr. Barto stated that his company informed Bogner of their inability to properly complete the job in July. The situation was remedied, Mr. Barto explained, when Barto was allowed to work on the entire floor area in December. Mr. Barto stated that, after Ms. Graham-Staley fell, he contacted Kurt Block, the manufacturer of the products supplied by Smuckers which were used to cover the floors. Mr. Block came to the Smuckers plant to inspect the work done in December 1998 and informed Mr. Barto that the paint and aggregate application had been done correctly.
In his deposition, Timothy Conyers, the person employed by Barto to repaint the floors, agreed that the work done in July of 1998 had not been properly completed because the floors were too wet. He stated that, though there were still a few puddles of water when he went back, he was able to apply the aggregate everywhere in his December application of the paint. Mr. Conyers admitted that he had never done a paint job in the manner required for this project; however, he stated that he followed the directions given to him by an employee of Smuckers. He also stated that the materials he used to paint the floor surface were already at the work site when he arrived. Mr. Conyers explained that, on his first day at the plant, he met with a Smuckers employee who showed him how to mix the products and where the mixing drill was located. According to Mr. Conyers, the Smuckers employee also showed him an example of a properly coated floor. This employee, Mr. Conyers stated, had even begun the trim work around the edges of the floor where Barto was supposed to paint. When asked, Mr. Conyers stated that he relied on the Smuckers employee in his paint application and that he received neither products nor advice from Bogner. Mr. Conyers acknowledged that, despite following the directions given to him and his even application of aggregate, some areas in the plant could still become slippery as the employees undertook their production tasks.
Daniel Facemire, employed in the maintenance department at Smuckers, stated in his deposition that he believed that the plant floor was very slippery in January 1999. He stated that he personally fell several times after he returned from the Christmas slowdown and that he informed his supervisors of the problem. Mr. Facemire related that, as employees of Smuckers fill the mixing kettles to make jelly and other products, there are spillovers which are constantly being hosed down with water. When asked, Mr. Facemire stated that the floor was in fact slippery due to the water.
On June 27, 2000, Ms. Graham-Staley filed a complaint in the Wayne County Court of Common Pleas, naming as defendants Bogner and Barto. On August 2, 2000, Bogner filed an answer to Ms. Graham-Staley's complaint denying liability. Barto also denied any liability in its response filed on August 17, 2000. Ms. Graham-Staley filed an amended complaint on November 27, 2000 to which both Bogner and Barto again denied liability.
On April 16, 2001, Bogner moved for summary judgment. A motion for summary judgment was also filed on behalf of Barto on the same date. On May 7, 2001, Ms. Graham-Staley filed a brief in opposition to the summary judgment motions. On May 31, 2001, the trial court granted the summary judgment motions in favor of Bogner and Barto. This appeal followed.
Appellant asserts two assignments of error. We will discuss them together to facilitate review.
 First Assignment of Error The trial court committed prejudicial error in granting Summary Judgment in favor of the Appellees-Defendant Bogner Construction as genuine issues of material fact remain upon which reasonable minds can reach differing conclusions.
 Second Assignment of Error The trial court committed prejudicial error in granting Summary Judgment in favor of the Appellees-Defendant Barto as genuine issues of material fact remain upon which reasonable minds can reach differing conclusions.
Ms. Graham-Staley asserts that the trial court erred when it granted the summary judgment motions because, upon reviewing the evidence submitted by the parties, there exists a genuine issue of material fact remaining for trial. We disagree.
Pursuant to Civ.R. 56(C), summary judgment is proper if:
 (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. Appellate review of a lower court's entry of summary judgment is de novo, applying the same standard used by the trial court. McKay v. Cutlip (1992),80 Ohio App.3d 487, 491. The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. Id. Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists. Henkle v.Henkle (1991), 75 Ohio App.3d 732, 735.
In order to sustain an action in negligence, a party must establish: (1) duty, (2) breach of the duty, and (3) an injury proximately caused by the breach. Menifee v. Ohio Welding Products, Inc. (1984),15 Ohio St.3d 75, 77. Therefore, in order to defeat a motion for summary judgment brought in a negligence action, a plaintiff must identify a duty owed to him or her by the defendant. See Feichtner v. Cleveland (1994),95 Ohio App.3d 388, 394; Keister v. Park Centre Lanes (1981),3 Ohio App.3d 19, 22-23. Further, the evidence must be sufficient, when considered most favorably to the plaintiff, to allow reasonable minds to infer that the duty was breached, that the breach of that duty was the proximate cause of the plaintiff's injury, and that the plaintiff was injured. Feichtner, supra; Keister, supra.
There is no set formula for ascertaining whether a duty exists.Mussivand v. David (1989), 45 Ohio St.3d 314, 318. The existence of a duty is ordinarily a question of law. Id. Duty "`is the court's "expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.'"" Id., quoting Prosser, Law of Torts (4 Ed. 1971) 325-26. Significantly, in regard to the duty of a contractor, Prosser Keeton, Law of Torts (5 Ed. 1984) 723-24, Section 104A, stated:
 One important limitation recognized in several cases is that the contractor is not liable if he has merely carried out carefully the plans, specifications and directions given him, since in that case the responsibility is assumed by the employer, at least where the plans are not so obviously defective and dangerous that no reasonable man would follow them.
(Citations omitted). Citing to this authority, the court in Jackson v.Franklin (1988), 51 Ohio App.3d 51, held that a contractor was not liable for the construction of a swimming pool when he merely followed the design and specifications of the construction contract. In the case, the court noted that the contractor could not be liable for following the specifications where such specifications were neither obviously defective or dangerous so that no reasonable person would have followed them. Id. at 55; see, also, Marshall v. Edgewood Skate Arena, Inc. (Feb. 9, 2000), Allen App. No. 1-99-57, unreported, 2000 Ohio App. LEXIS 398, at *10.
In the case at bar, Ms. Graham-Staley asserts that both Bogner and Barto were negligent in their work performed at the Smuckers plant prior to her fall on January 5, 1999. Specifically, she avers that, as a general contractor, Bogner undertook the job of applying aggregate and repainting the plant floors, and that Barto, who was hired by Bogner to perform the labor in the flooring work, incorrectly applied the aggregate when repainting the plant floors, thereby making the floors slippery due to the uneven application of aggregate. Without considering whether the other elements of negligence were met, we find that no evidence was presented which discloses a duty on the part of either Bogner or Barto, as Barto merely carried out Smuckers' plans, specifications, and directions as given.
Evidence was presented in Mr. Armbruster's deposition that, while the application of aggregate should prevent the plant floors from being slippery, ingredients often fall on the plant floors in the jelly-making process. Mr. Armbruster acknowledged that he had personally inspected Barto's December paint application and found that the aggregate had been applied in a satisfactory manner.
Mr. Stofer, stated that, as a representative of Bogner, he had met with Mr. Armbruster to discuss Smuckers' job specifications. He was told by Smuckers that the work materials would be provided. He was also given directions on how to complete the work. He testified that, while he had immediately gotten a call from Mr. Armbruster when Smuckers felt that the initial paint job was unsatisfactory, he received no such call after the December paint application.
Mr. Barto testified that Smuckers had provided the necessary materials for the paint application. He stated that he personally called Mr. Block, Smuckers' product supplier for the project, to inspect the December paint and aggregate application. He reported that Mr. Block had felt that such application had been done correctly. While Mr. Barto admitted that he had never undertaken this type of project, he explained that he was assured by a Smuckers maintenance man that he would personally explain the job directions and specifications. Additionally, Mr. Barto stated that the preparatory work, such as washing and cleaning the floors, was completed by Smuckers prior to the paint application. In summerizing his view of the project, Mr. Barto explained that his company was "there to provide labor for whatever Smuckers wanted done."
In his deposition, Mr. Conyers stated that the materials used to paint the floor surface were already at the work site when he arrived and that he followed the directions given to him by a Smuckers employee in completing the job. Such directions, he stated, were given to him on his first day when he met with a Smuckers employee who showed him how to mix the products and where the mixing drill was located. This employee, who had even begun the trim work around the floor edges where Barto was to paint, showed Mr. Conyers an example of a properly coated floor.
Construing the evidence most strongly in favor of Ms. Graham-Staley, we conclude that a reasonable jury could not find that either Barto or Bogner were liable to Ms. Graham-Staley for the work done in the Smuckers plant. Specifically, we note that neither Bogner nor Barto designed the plans and specifications for the project. Rather, the affidavits establish that Barto satisfactorily completed the work in accordance with the directions and terms as provided and that the plans and specifications provided by Smuckers contained no obviously dangerous elements.
There is no genuine issue of material fact, and Bogner and Barto were entitled to judgment as a matter of law. Therefore, the trial court properly granted summary judgment to Bogner and Barto. Accordingly, the assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
BAIRD, J., WHITMORE, J. CONCUR.