## Ramsey v. Edgepark, Inc.
*[Cite as 2 AOA 552]*

*Case No. 88AP-1048*
*Franklin County, (10th)*
*Decided March 22, 1990*

*1st Amend. U.S. Const.*
*Civ. R. 56*

*Arter & Hadden Mr. R. Douglas Wrightsel and Ms. Nancy Manougian, for appellees.*

*Watts, Hoffmann, Fisher & Heinke Co., L.P.A. Mr. Kenneth D. Petrey and Mr. Steven D.A. McCarthy, for appellants.*

BOWMAN, J.

During 1987, appellants, Steve Garrett, Ben Davis, John Piccone and Lawrence Crane, who are all employees of Edgepark, Inc., became upset with the manner in which Nationwide Mutual Insurance Co. ("Nationwide") was administering its Medicare Program. Specifically, appellants believed that appellees, William P. Ramsey, John E. Fisher and Raymond L. Wilson who are officers of Nationwide, administered the Medicare Program unfairly and violated Medicare regulations. Because of their beliefs, appellants sought to inform the public, including the residents of Worthington and Westerville, where appellees reside, of Nationwide's practices by congregating, picketing and marching at appellees' homes and businesses, and distributing and mailing literature.

On May 29, 1987, appellees files a verified complaint, a motion for a temporary restraining order, and a memorandum in support, and a motion for a preliminary injunction, including affidavits in support, in the Franklin County Court of Common Pleas seeking to enjoin appellants from congregating, marching, picketing, photographing and distributing literature at and near appellees' homes. Appellees asserted that such activity disturbed them and their families, invaded their right to privacy in their homes and interfered with their domestic lives. On May 29, 1987, after a hearing, the trial court issued a temporary restraining order prohibiting appellants from picketing at appellees' homes, from distributing literature concerning Edgepark's dispute with Nationwide at appellees' homes, from taking photographs of appellees, their family members and their property and from congregating in groups of more than one person within two hundred yards of appellees' homes.

On June 19, 1987, a hearing was held before a referee on appellees' motion for preliminary injunction. Crane, Ramsey and Eloise Fisher, wife of John Fisher, testified, and evidence was admitted. The referee recommended that the court grant a preliminary injunction prohibiting appellants from picketing at, or in the vicinity of, appellees' individual residences. The referee also recommended that the court invoke Civ. R. 53(E)(7) and issue an interim order enjoining appellants from picketing appellees' residences. The trial court adopted the referee's report as to the interim order and sustained appellees' motion for preliminary injunction effective immediately. Appellants filed objections to the referee's report and, on August 24, 1987, the court overruled the objections, approved and adopted the referee's report and sustained the motion for preliminary injunction in accordance with the terms and conditions which were previously imposed. An entry to this effect was filed September 14, 1987.

On July 11, 1988, the trial court granted appellees' unopposed motion for leave to file an amended verified complaint. The amended complaint sought injunctive relief against appellants from mailing literature to appellees' homes. On August 15, 1988, appellants filed a request for a modification of the preliminary injunction to allow appellants to march within two hundred yards of appellees' residences without actually focusing the protest at appellees' homes. On August 8, 1988, appellants filed a motion for an extension of time to oppose appellees' motion to file an amended complaint. Appellants asserted that they were unable to respond to appellees' motion because their counsel was out of town for three weeks in trial on an unrelated case. Appellees filed a memorandum in opposition to appellants' motion asserting that appellants failure to respond to their motion did not constitute excusable neglect. The court never ruled on appellants' motion.

On August 31, 1988, the trial court granted appellees' motion for leave to file a motion for summary judgment, which included affidavits, written admissions and transcripts of evidence. On September 13, 1988, appellants filed a request for an extension of time to respond to appellees' motion for summary judgment stating that the issues alleged in the amended complaint were substantially different from the issues in the original and, consequently, the regularly allotted response time for motions for summary judgment was not sufficient for appellants to address the new matters. In addition, appellants alleged that their counsel was out of town for four days regarding another matter in federal district court. The trial court did not rule on appellants' motion for extension of time or their motion for modification of the preliminary injunction. Instead, on October 4, 1988, the trial court granted summary judgment to appellees stating that there were no genuine issues of material fact and that appellees were entitled to judgment as a matter of law. Appellants raise the following assignments of error:

"1. The Court of Common Pleas erred in that it

abused its discretion by refusing to role on:

"(A) 'Request for Extension of Time to Response [sic] to Motion for Summary Judgment' filed on September 13, 1988; and

"(B) 'Defendant's Request for Modification of Preliminary Injunction' filed on August 4, 1988.

"2. The Court of Common Pleas erred as a matter of law by refusing to grant 'Defendant's Request for Modification of Preliminary Injunction' by granting the Plaintiffs a preliminary and permanent injunction which effectively prevented Edgepark from conducting peaceful marches through the streets and sidewalks of the cities of Westerville and Worthington, both in Franklin County, Ohio.

"3. The Court of Common Pleas erred as a matter of law by granting the Plaintiffs a summary judgment where the record indicated that genuine issues of fact existed.

"4. The Court of Common Pleas erred as a matter of law by granting the Plaintiffs a summary judgment where the plaintiffs failed to establish a prima facie case for any cause of action recognized by the Ohio courts.

In Assignment of Error No. 1(A), appellants assert that the trial court abused its discretion by refusing to rule on their request for an extension of time to respond to appellees' motion for summary judgment. Civ. R. 56(F), states in part as follows:

"*** Should it appear from the affidavits of a party opposing the motion for summary judgment that he cannot for sufficient reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."

When a request for a continuance to respond to a motion for summary judgment is not supported by affidavits, a trial court is free to consider the merits of the motion without first ruling on the motion for continuance. *Grange Mut. Cas. Co.* v. *State Auto. Mut. Ins. Co.* (1983), 13 Ohio App. 3d 217. Thus, before we can find error by the trial court, we must first determine whether appellants supported their motion by affidavits and presented sufficient reasons to justify a continuance. *Hartwell* v. *Volunteers of America* (1981), 2 Ohio App. 3d 37. In *Hartwell,* the party moving for a continuance stated in their affidavit that facts central to the determination of summary judgment were totally within the knowledge of the opposing party and that a continuance was necessary for further discovery. This court held that the plaintiff had demonstrated sufficient reasons why they could not oppose the summary judgment by affidavit and, thus, a continuance should have been granted.

In this case, appellants requested an extension of time to respond to appellees' motion for summary judgment and stated that the request was made for the following reasons:

"1. Plaintiffs have recently been given permission by this court and have amended the Complaint in the within matter which now includes new and substantially different issues as those from the original Complaint. Said issues were not address [sic] at the temporary Restraining Order here in this matter.

"2. Further, due to the schedule of Defendants' Counsel and the above mentioned additional issues the regularly allotted fourteen (14) days within which to respond is not sufficient time to accomplish those matters on behalf of Defendants.

"3. Further, the fourteen (14) day response time period in this matter also included the Labor Day holidays plus Counsel for Defendants was required to be in Milwaukee, Wisconsin on the 8th and 9th of September for Depositions in the Federal United States Court there and is

further required to be in Milwaukee on the 13th and 14th of September for further Depositions with respect to the same matter.

"4. Additionally, without discussing the merits in this matter it is Defendants good faith belief that after this Court Rules upon the motions now pending for Stay of Discovery and Modification of the current Preliminary Injunction this matter may require discovery in order to respond to the Summary Judgment issues."

Appellants attached an affidavit in support of the request for continuance which stated:

"Kenneth D. Petrey, is the attorney of the record in the above caption case, that the reason set forth in the Motion for an Extension of Time are true and correct to the best of my knowledge and that the same is not done for purposes of delay."

In *Gates Mills Investment Co.* v. *Pepper Pike* (1978), 59 Ohio App. 2d 155, the court stated:

"\*\*\* Civ. R. 56(F) requires the opposing party to submit affidavits with sufficient reasons stating why it cannot present by affidavit facts sufficient to justify its opposition. Mere allegations requesting a continuance or deferral of action for the purpose of discovery are not sufficient reasons why a party cannot present affidavits in opposition to the motion for summary judgment. There must be a factual basis stated and reasons given why it cannot present facts essential to its opposition to the motion. If this is done, the trial court has several alternatives. It may refuse the application for summary judgment; it may order a continuance to permit affidavits to be obtained in opposition to the motion for summary judgment; it may grant a continuance for further discovery; or it may make such other order as is just. These are all within the trial court's discretion and are not mandatory. Civ. R. 55(F)."

The trial court did not abuse its discretion in not granting appellants' request for a continuance to respond to appellees' motion for summary judgment. The allegations in appellants' motion states the request for the continuance was made because the amended complaint added an issue, injunctive relief against appellants mailing literature to appellees' homes, which was not addressed at the hearing on the temporary restraining order. In fact, there was evidence regarding items being mailed to appellees' homes at the 1987 hearing, as well as copies of some of the literature mailed, which were introduced as

exhibits. Appellants also contend that the length of time to respond to the motion was insufficient due to the Labor Day holiday, their counsel's schedule with other legal matters, and discovery which may be necessary. This court finds that these general reasons were not set forth in an affidavit as required by Civ. R. 56(F) and are not sufficient to mandate a continuance to respond to a motion for summary judgment and, thus, the trial court did not err in refusing to grant appellants' request for a continuance.

Appellants also argue that the court abused its discretion by not granting the continuance pursuant to Civ. R. 6(B) which provides that a court may at any time in its discretion grant an extension of time. However, to establish an abuse of discretion, appellants must demonstrate that the court acted arbitrarily, unreasonably or unlawfully. Appellants have not met their burden, and Assignment of Error No. 1(A) is not well-taken.

Appellants assert in their second, third and fourth assignments of error that the trial court erred by granting summary judgment to appellees, thus permanently enjoining appellants from picketing within two hundred yards of appellees' homes, as well as enjoining them from mailing literature to appellees' homes. The issues in these assignments of error are related and are considered together.

Summary judgment is proper if there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. It is a procedural device designed to terminate litigation at an early stage where a resolution of factual disputes is unnecessary. However, it must be awarded with caution, resolving all doubts and construing the evidence against the moving party and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion. See *Norris* v. *Ohio Std. Oil Co.* (1982), 70 Ohio St. 2d 1; *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64.

Appellants assert that the trial court erred because it considered the transcript of the 1987 hearing on the preliminary injunction in deciding the motion for summary judgment, thus making the decision based on an improper record.

Civ. R. 56(C) provides:

"\*\*\* Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, *transcripts of evidence in the pending case,* and

written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. ***" (Emphasis added.)

In *Gessler* v. *Madigan* (1974), 41 Ohio App. 2d 76, the trial court granted summary judgment based, in part, upon the evidence adduced at the hearing for preliminary injunction. However, because the evidence from the hearing had not been reduced to transcript form, the court held that it was not a proper item to be considered under the provisions of Civ. R. 56(C).

Contrary to the facts in *Gessler,* the evidence from the preliminary hearing in this case was presented in transcript form. In its written decision, the trial court referred to specific pages of the transcript to support its conclusion. A transcript of a preliminary injunction hearing is a transcript of evidence in the pending case and, thus, is properly given consideration when deciding a motion for summary judgment.

Appellants also assert that the facts before the court did not establish a prima facie case of invasion of privacy. In *Housh* v. *Peth* (1956), 165 Ohio St. 35, the court held, at the syllabus:

"1. The right of privacy is the right of a person to be let alone, to be free form unwarranted publicity, and to live without unwarranted interference by the public in matters with which the public is not necessarily concerned.

"2. An actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."

In *Sustin* v. *Fee* (1982), 69 Ohio St. 2d 143, the court reaffirmed *Housh, supra,* and cited with approval the Restatement of the Law 2d, Torts (1977) 378, Section 652B, which provides:

"'One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.' "*Sustin, supra* at 145.

This court has held that even a single act of harassment and torment of a person can constitute an actionable invasion of the right to privacy. *McCormick* v. *Haley* 1973), 37 Ohio App. 2d 73.

Appellees were granted an injunction based on the invasion of their right to privacy, and more specifically, based on appellants' wrongful intrusion into appellees' private activities. Appellants contend that appellees have not established that their picketing and literature mailing was done in a manner that would be highly offensive to a reasonable person. Appellants also argue that, even if the intrusions did establish an invasion of the right to privacy, the injunction was wrongful because it infringes upon appellants' First Amendment right to freedom of speech.

In *Frisby* v. *Schultz* (1988), 487 U.S. 474, 108 S.Ct. 2495, the Supreme Court addressed the issue of whether an ordinance which completely bans picketing before or about any residence is a violation of the First Amendment. In *Frisby*, appellees, a group opposed to abortion and whose size ranged from eleven to more than forty persons, assembled outside a doctor's home on at least six occasions for periods of time varying from one to one and one-half hours. The picketing, as in this case, was generally peaceful, but nonetheless, generated substantial controversy. As a result, the town board enacted the following ordinance:

"'It is unlawful for any person to engage in picketing before or about the residence or dwelling of any individual in the Town of Brookfield.' ***" *Id.* at 2498.

The primary purpose of the ordinance was "the protection and preservation of the home" through assurance that the residents of Brookfield could enjoy, in their homes and dwellings, a feeling of well-being, privacy and tranquility.

The Supreme Court held that because all public streets, regardless of whether or not they are in a residential neighborhood, are public fora, the antipicketing ordinance must be measured against the stringent standards that have been established for restrictions on speech in such public places. Thus, in order for a regulation relating to the time, manner and place of expression to be enforced, the state must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. See *Perry Education Assn.* v. *Perry Local Educators's Assn.* (1983), 460 U.S. 37, at 45.

In *Frisby, supra*, the court found the Brookfield ordinance to be narrowly drawn because it only prohibited picketing which was taking place solely in front of a particular residence. The court also held that the ordinance served a compelling state interest because individuals are not required to welcome unwanted speech into their homes, and the government may protect this freedom. The First Amendment permits the government to prohibit speech as intrusive when the captive audience cannot avoid the speech. See *Consolidated Edison Co.* v. *Public Service Comm. of New York* (1980), 447 U.S. 530. Consequently, the court held that the ordinance was not facially invalid under the First Amendment.

While the case before us does not arise in the context of a legislative ban of targeted picketing, but arises in the context of whether a court may protect a residence from targeted picketing in the interest of protecting the right to privacy, the underlying rationale remains the same. At the hearing on the injunction, Eloise Fisher, wife of appellee Fisher, testified that she and her family had been annoyed and disturbed by appellant's picketing and that the family had gone out of their way to avoid the picketers, including instructing family members to not come to the house and canceling a Mother's Day celebration. She also testified that she sent a letter to all of her neighbors informing them of the picketers so that they would be aware of what was going on at the Fisher residence. In addition to Mrs. Fisher's testimony, various exhibits were admitted into evidence which showed picketing at the homes of the Wilsons, the Ramseys and the Fishers, as well as picketing in front of the State Capitol Building, the Nationwide Corporate Headquarters, and various Nationwide agencies throughout the state. Ramsey also testified that picketers had been in front of his house, but they had not destroyed any of his property, and he indicated that picketers had been in front of the Wilson's house as well.

In *Frisby, supra*, the Supreme Court stated, at 2503:

"*** Here, *** the picketing is narrowly directed at the household, not the public. The type of picketers banned by the *** ordinance generally do not seek to disseminate a message to the general public, but to intrude upon the targeted resident, and to do so is a especially offensive way. Moreover, even if some such picketers have a broader communicative purpose, their activity nonetheless inherently and offensively intrudes on residential privacy. The devastating effect of targeted picketing on the quiet enjoyment of the home is beyond doubt[.]"

The Activity of picketers when targeted at a specific residence may inherently and offensively intrude on residential privacy. In his concurring opinion in the case of *Gregory* v. *Chicago* (1969), 394 U.S. 111, at 125, Justice Black eloquently and succinctly capsulized the need to protect citizens from harassment in their own homes when he stated:

"*** Were the authority of government so trifling as to permit anyone with a complaint to have the vast power to do anything he pleased, wherever he pleased, and whenever he pleased, our customs and our habits of conduct, social, political, economic, ethical and religious, would all be wiped out, and become more than relics of a gone but not forgotten past. *** [P]erhaps worse than all other changes, homes, the sacred retreat to which families repair for their privacy and their daily way of living, would have to have their doors thrown open to all who desired to convert the occupants to new views, new morals, and a new way of life. Men and women who hold public office would be compelled, simply because they did hold public office, to lose the comforts and privacy of an unpicketed home. I believe that our Constitution, written for the ages, to endure except as changed in the manner it provides, did not create a government with such monumental weaknesses. Speech and press are, of course, to be free, so that public matters can be discussed with impunity. But picketing and demonstrating can be regulated like other conduct of men. ***"

The mere act of targeted picketing at a residence can be a highly offensive intrusion warranting an injunction prohibiting the activity. A court-ordered limitation on the rights of picketers does not violate their First Amendment rights as long as the injunctive relief is narrowly tailored to protect the privacy of the targeted individual. A court may not bar picketers from using a residential street or the street on which targeted individual resides since these are traditional public fora. See *Carey* v. *Brown* (1980), 447 U.S., 455. Consequently, picketers are free to disseminate their viewpoints to a community, including the targeted individual who lives on the block or street being picketed. However, a court may enjoin focused picketing taking place solely in front of a particular residence in order to protect the privacy interest of that particular resident.

Based upon this court's reading of *Frisby*, any impingement beyond this narrow time, place and manner regulation would be an infringement upon the First Amendment rights of those attempting to use public streets to communicate their message to the community.

In this case, there was evidence that the homes of each of the appellees were singled out and made the target of hostile picketing. There is also evidence that appellees were offended by the picketing. In addition to the testimony and exhibits from the hearing on the injunction, appellees attached affidavits and requests for admissions to their motion for summary judgment. The admissions, which were deemed admitted pursuant to Civ. R. 36, because they were unanswered, stated that Edgepark and/or the individual appellants mailed literature to the residences of appellees. The affidavits of Jo Wilson, Eloise Fisher, John Fisher, and William Ramsey, all recounted incidents of picketing, being followed in their cars, telephone calls, videotaping, picture taking, literature droppings and mailings, which were done by appellants and which were upsetting and disturbing to the affiants and their families.

A trial court has discretion in framing an injunctive order, and may act within the latitude implied by that discretion. *Superior Sav. Assn.* v. Cleveland Council of Unemployed Workers (1986), 27 Ohio App. 3d 344. A reviewing court may interfere only where there has been an abuse of discretion. The term "abuse of discretion" connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Beacon Journal Pub. Co.* v. *Stow* (1986), 25 Ohio St. 3d 347, at 349.

Because the Supreme Court has recognized targeted picketing as being inherently offensive, this court finds that the trial court did not abuse its discretion when it found appellants' activities to be offensive to a reasonable person and issued the injunction prohibiting appellants from intruding into appellee's privacy in that manner. However, the trial court did err when it restricted appellants from picketing within two hundred yards of appellees' homes, as this restriction violates appellants' First Amendment right to disseminate information from a public forum, namely a public street. Appellants have a right to picket in the neighborhood, block or street where appellees live. There is no invasion of appellees' privacy as long as the picketers remain on public property and do not focus their activities solely at a particular home.

The final issue regarding the injunction order is the restriction upon the mailing of documents to apellees' homes. In *Rowan* v. *United States Post Office Dept.* (1970), 397 U.S. 728, at 737, the United States Supreme Court held:

"*** [T]he mailer's right to communicate is circumscribed only by an affirmative act of the addressee giving notice that he wishes no further mailings from that mailer."

In this case, appellees made an affirmative act giving notice that they wished to receive no further mailings from appellants by filing their amended complaint.

The evidence in the record establishing that appellants mailed literature to each appellee's home prior to the filing of the complaint is in the form of unanswered admissions which were attached to appellees' motion for summary judgement. Civ. R. 36 requires that when requests for admissions are filed by a party, the opposing party must timely respond to them by objection or answer. Failure to respond at all to the requests will result in the requests becoming admissions, and the matter admitted conclusively established for the purpose of the pending action. *T & S Lumber Co.* v. *Alta Constr. Co.* (1984), 19 Ohio App. 3d 241. Thus, an admission arising by failure to respond to a request for admissions is a written admission satisfying the requirement of Civ. R. 56(C). *T & S Lumber, supra.* In addition to the admissions, affidavits filed in support of the motion for summary judgment also establish that appellees received mailings from appellants, including videotapes and literature.

Based on the foregoing, this court finds that the trial court did not err in granting a permanent injunction to appellees enjoining appellants from picketing appellees' individual residences and mailing literature to appellees. Summary judgment was proper because there are no genuine issues of material fact and appellees are entitled to judgment as a matter of law. Accordingly, appellants' second, third and fourth assignments of error are overruled in part but are sustained to the extent that that portion of the induction which enjoins appellants from picketing within two hundred yards of appellees' homes is in violation of *Frisby, supra.*

Finally, appellants' Assignments of Error No. 1(B) contends that the trial court abused its discretion by failing to rule on its motion to modify the preliminary injunction. Given our disposition of Assignments of Error Nos. 2, 3 and 4, which affirm the judgement of the trial

court with a modification, appellants can demonstrate no prejudice by the trial court's failure to rule on their motion. By remanding this case to the trial court for the deletion of the two-hundred-yard restriction, this court has granted the relief requested by appellants' in their motion. Therefore, appellants' Assignment of Error No. 1(B) is not well-taken.

For the foregoing reasons, appellants' first assignments of error is overruled and appellants' second, third and fourth assignments of error are sustained with respect to the two-hundred-yard restriction, and otherwise are overruled. The judgment of the trial court is modified so as to delete therefrom that portion of the permanent injunction which enjoins appellants from picketing within two hundred yards of appellees' homes and, as modified, is affirmed. This cause is remanded to the trial court for implementation and execution of the modified judgment.

*Judgment modified and affirmed,*
*and cause remanded.*

REILLY, P.J., and BRYANT, J., concur.