OPINION
{¶ 1} Plaintiffs-appellants, Jon H. Cassner (in his individual capacity and in his capacities as Trustee of the Carl C. Cassner Irrevocable Trust dated August 4, 1981, and as Co-Personal Representative of the Estate of Alvin B. Cassner), Cathy Cassner, Curtis B. Cassner (in his individual capacity and in his capacity as Co-Personal Representative of the Estate of Alvin B. Cassner), Eric A. Cassner, and Rotary Forms Press, Inc., appeal from the Franklin County Court of Common Pleas' entry of summary judgment against them and in favor of defendant-appellee, Bank One Trust Co., N.A.
 {¶ 2} The following undisputed facts are taken from the pleadings and evidence of record. This case arises out of an arrangement whereby Alice E. Cassner (now deceased) became the settlor, and appellee became the trustee, of a Multiple Power Liquidity Trust ("MPLT") dated December 23, 1983. All plaintiffs-appellants, with the exception of Rotary Forms Press, Inc., are beneficiaries of the MPLT. The trust was created at the suggestion of Alice Cassner's financial advisor as a means to provide cash, at Alice Cassner's death, sufficient to meet her estate's anticipated tax liabilities. The trust was funded with universal life insurance policies payable upon Alice Cassner's death.
 {¶ 3} Rotary Forms Press, Inc., the Cassner family's closely held corporation ("the company"), purchased two universal life policies ("the policies"), each with a death benefit of $1,000,000. The company and the MPLT entered into agreements of a type known as "Split Dollar Insurance Agreements," whereby the company agreed to pay the premiums on the policies and the policies were assigned to the company as collateral. The company then had the right to be reimbursed the full amount of its premium payments from the death benefits paid under the policies. The premiums were variable and could fluctuate depending on the cost of insurance, the return on investments and other factors experienced by the insurance company.
 {¶ 4} The performance of the policies used to fund the trust was intrinsically affected by a number of factors, including the interest rate applied, the mortality charge (which increases as the person whose life is insured ages), and the administrative charge. Beginning in 1984 and continuing at least until 1998, the "crediting rate," or interest rate, of the policies declined. However, they maintained their cash value between 1992 and 1995.
 {¶ 5} By letter dated September 25, 1997, appellee informed Alice Cassner that it had engaged the services of another company to review the financial stability of the policies. Enclosed with the letter was correspondence from the reviewing company in which appellee was advised that the policies were projected to terminate without value by the year 1999, during which Alice Cassner would reach the age of 84. This correspondence was the first indication to appellants that the value of the policies had declined to the point that they might terminate prior to Alice Cassner's death.
 {¶ 6} Appellants believed that Alice Cassner would live past the point in time at which the policies were projected to terminate. The company could have paid increased premiums in order to buy three additional years of insurance coverage. The company could also have surrendered the policies for their cash value. Jon Cassner testified at deposition that the company was not in a position to pay the significantly higher premiums that would have been required to secure additional years of coverage. Curt Cassner testified at deposition that an expert advised the family that, at her then-advanced age, Alice Cassner was "uninsurable" such that new and different insurance policies could not be purchased. Thus, in August 1998, appellants effected the transfer of ownership of the policies from the MPLT to appellants. Thereafter, appellants surrendered the policies in exchange for their total cash value of $110,955.50. Two years later, on November 2, 2000, Alice Cassner passed away at the age of 85.
 {¶ 7} On March 22, 2002, appellant re-instituted the present action (after having voluntarily dismissed an earlier complaint filed April 13, 2001) stating causes of action against appellee for breach of contract, breach of fiduciary duty and negligence. All of the allegations in the complaint relate generally to appellee's alleged failure to properly discharge its duties as trustee, which allegedly caused the trust property to lose value, which, in turn, caused appellants to suffer economic losses.
 {¶ 8} On June 18, 2003, appellee filed its motion for summary judgment, arguing that the applicable statute of limitations bars all of appellants' claims. On July 7, 2003, appellants filed a motion for continuance pursuant to Civ.R. 56(F); contemporaneously, appellants filed a "partial" memorandum contra to the motion for summary judgment. Later, on September 22, 2003, appellants filed a supplemental memorandum contra that incorporated material discovered during depositions taken after July 7, 2003.
 {¶ 9} By separate decisions both filed October 3, 2003, the trial court overruled appellants' Civ.R. 56(F) motion and sustained appellee's motion for summary judgment. The trial court found that the Civ.R. 56(F) motion did not meet the requirements of the rule. Specifically, the court found that the motion for continuance set forth merely allegations and not sufficient reasons why facts essential to the opposition of the motion for summary judgment could not be presented by affidavit. The court further found that appellants had failed to indicate how the additional discovery they would obtain from the depositions they planned to take was needed to respond to appellee's argument that the applicable statute of limitations barred appellants' claims.
 {¶ 10} The trial court did not consider appellants' supplemental memorandum contra in passing upon the motion for summary judgment. In granting summary judgment in favor of appellee, the court found first that appellants' "breach of trust agreement" (breach of contract) claim, though denominated as such, is actually a claim for breach of fiduciary duty, subject to the four-year limitations period found in R.C. 2305.09(D). The court further found that appellants' claim for negligence is a claim for breach of fiduciary duty (though involving a higher standard of care than that applicable in a simple negligence action.) The court found that appellants' cause of action for breach of fiduciary duty accrued when their interest was first impaired by appellee's alleged breach. Working backward four years from the date of the initial filing of appellants' complaint (April 13, 2001), the court determined that any alleged breaches that occurred earlier than April 12, 1997, were barred by the limitations period in R.C. 2305.09(D). Finally, the court found that appellants could not demonstrate that any actions appellee took or failed to take during the four years immediately preceding the filing of the original complaint were causally related to any damages appellants may have suffered. On October 10, 2003, the trial court journalized an entry granting summary judgment to appellee.
 {¶ 11} Appellants timely appealed, and assert the following three assignments of error for our review:
I. The trial court erred by denying the appellants' July 8, 2003 motion for an extension of time to conduct discovery pursuant to Civ.R. 56(F).
II. The trial court erred as a matter of law by applying the wrong statute of limitations pursuant to the Ohio Revised Code § 2305.09(D) and thereby granting the appellee's June 18, 2003 motion for summary judgment.
III. The trial court erred as a matter of law by granting the appellee's June 18, 2003 motion for summary judgment due to the manner in which it applied the Statute of Limitations pursuant to Ohio Revised Code § 2305.09(D) to the appellants' causes of action.
 {¶ 12} We begin by addressing appellants' first assignment of error. The granting or a denial of a motion for extension of time is within the broad discretion of the trial court. Helton v. Ohio Adult Parole Auth.
(Jun. 26, 2001), 10th Dist. No. 00AP-1108; Walter v. AlliedSignal, Inc.
(1999), 131 Ohio App.3d 253, 264, 722 N.E.2d 164; Gates Mills InvestmentCo. v. Pepper Pike (1978), 59 Ohio App.2d 155, 392 N.E.2d 1316. Thus, the trial court's decision to grant or deny a motion for continuance pursuant to Civ.R. 56(F) will not be disturbed on appeal unless the court abused its discretion. Carrier v. Weisheimer Cos., Inc. (Feb. 22, 1996), 10th Dist. No. 95APE04-488. An abuse of discretion implies an unreasonable, arbitrary or unconscionable attitude of the trial court. Ruwe v. Bd. ofSpringfield Twp. Trustees (1987), 29 Ohio St.3d 59, 61, 505 N.E.2d 957.
 {¶ 13} In support of their first assignment of error, appellants argue that they provided sufficient reasons why they needed a continuance to conduct discovery in order to defend against appellee's motion for summary judgment. We disagree. Rule 56(F) of the Ohio Rules of Civil Procedure provides:
Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.
 {¶ 14} A motion for a continuance to conduct discovery under Civ.R. 56(F) must be supported by a proper affidavit. See State ex rel.Coulverson v. Ohio Adult Parole Auth. (1991), 62 Ohio St.3d 12,577 N.E.2d 352. "Mere allegations requesting a continuance or deferral of action for the purpose of discovery are not sufficient reasons why a party cannot present affidavits in opposition to the motion for summary judgment. There must be a factual basis stated and reasons given why it cannot present facts essential to its opposition to the motion." GatesMills Investment Co., supra, at 169. Accord Advanced AnalyticsLaboratories, Inc. v. Kegler, Brown, Hill Ritter, 148 Ohio App.3d 440,2002-Ohio-3328, 773 N.E.2d 1081, at ¶ 69; Glimcher v. Reinhorn (1991),68 Ohio App.3d 131, 138, 587 N.E.2d 462.
 {¶ 15} In the present case, appellants presented with their motion for continuance the affidavit of Rick L. Brunner, one of their attorneys. The affidavit states, in pertinent part:
3. Either Jennifer A. Wiggins and/or myself for months (i.e. as early as, November 5, 2002, November 14, 2002, December 2, 2002, March 4, 2003) have repeatedly requested to depose the Defendant's expert and the Defendants (sic) 30(B)(5) representatives, however have not yet had the opportunity to depose said individuals, a copy of said correspondences are attached * * *.
4. Defendant's counsel on or about April 4, 2003 through a written correspondence, via email only, informed both Jennifer Wiggins and myself that she expected Defendant's expert report to be available shortly, a copy of said correspondence is attached * * *.
* * *
9. Either I and/or Jennifer A. Wiggins have repeatedly requested the Defendant's expert report, but only as of June 17, 2003 did I receive the Defendant's expert's report.
10. The expert's report that I received on June 17, 2003 from the Defendant does not appear to be signed by the expert, nor is the expert's Curriculum Vitae accompany (sic) said report.
11. Plaintiffs (sic) counsel have not yet deposed either Defendant's expert or Defendants (sic) 30(B)(5) representatives.
12. The Brunner firm will need to depose both Defendant's expert and Defendants (sic) 30(B)(5) representatives about their knowledge of these circumstances in the above captioned matter before this Court.
 {¶ 16} The trial court did not abuse its discretion in denying appellants' request for a continuance to respond to appellee's motion for summary judgment. Like the motion involved in Advanced AnalyticsLaboratories, Inc., supra, appellants' "reasons for the requested continuance were general in nature, with no particularized factual basis to indicate why further discovery was needed to respond to the legal issues on which [the] summary judgment motion was predicated, or how further discovery would aid the trial court in resolving the legal issues before it." Advanced Analytics Laboratories, Inc., supra, at ¶ 70. (Emphasis sic.)
 {¶ 17} Attorney Brunner's affidavit provides no detailed explanation of what appellants hoped or expected to discover in deposing appellee's expert or corporate representative. It also does not explain how this information would assist appellants in opposing arguments that the breach of contract claim was actually a breach of fiduciary duty claim, and that appellants could produce no evidence of breaches of fiduciary duty that were not time-barred. Furthermore, the affidavit indicates that, even though 15 months had passed since the re-filing of the complaint, appellants had not yet obtained appellee's expert report and had not yet deposed appellee's expert or corporate representative. The affidavit appears to blame this delay on appellee and/or its counsel. However, it appears that the delay was in fact occasioned by a failure to utilize the tools provided by the Ohio Rules of Civil Procedure that afford parties the ability to obtain required discovery in a timely fashion. Simply put, appellants did not justify why the court should give them more time to obtain what they had already had 15 months to obtain, nor did they adequately explain how the additional discovery would aid the court in determining the issues presented by appellee's motion for summary judgment.
 {¶ 18} The party seeking a continuance under Civ.R. 56(F) bears the burden of demonstrating that it is warranted. Glimcher v. Reinhorn
(1991), 68 Ohio App.3d 131, 587 N.E.2d 462. In the present case, appellants did not meet their burden of demonstrating that a continuance was warranted. The trial court was thus within its discretion to deny the Civ.R. 56(F) motion and was free to consider appellee's motion for summary judgment. See Ramsey v. Edgepark, Inc. (1990), 66 Ohio App.3d 99,583 N.E.2d 443; Transamerica Financial Services v. Stiver (1989),61 Ohio App.3d 49, 572 N.E.2d 149; Murphy v. East Akron Community House
(1987), 56 Ohio App.3d 54, 564 N.E.2d 742. Accordingly, appellants' first assignment of error is overruled.
 {¶ 19} Appellants' second and third assignments of error relate to the propriety of the trial court's grant of summary judgment in favor of appellee. Our review of a trial court's grant of summary judgment is de novo. Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38, 654 N.E.2d 1327. Summary judgment is proper only when the party moving for summary judgment demonstrates: (1) no genuine issue of material fact exists, (2) the moving parties are entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, when the evidence is construed in a light most favorable to the nonmoving party. Civ.R. 56(C); State ex rel. Grady v. State Emp.Relations Bd. (1997), 78 Ohio St.3d 181, 677 N.E.2d 343.
 {¶ 20} The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on the essential element(s) of the nonmoving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280,292, 662 N.E.2d 264.
The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.
Id. at 293.
 {¶ 21} In their second assignment of error, appellants argue that the trial court erred in its characterization of appellants' claim for breach of contract, and applied the incorrect statute of limitations to this claim and to their claims for breach of fiduciary duty and negligence.
 {¶ 22} First, appellants argue that the claim contained in Count I of their complaint is truly a claim for breach of contract and not, as the trial court found, a tort claim for breach of fiduciary duty. They urge that this claim is thus subject to the 15-year statute of limitations for breach of contract found in R.C. 2305.06. Appellants devote much of their argument in this regard to the fact that their claim is "based on a written contract — the MPLT," and that this document meets all of the requirements for a fully enforceable contract.[1] The trial court, however, found only that the allegations in Count I state a claim for breach of fiduciary duty as opposed to breach of contract; the court below did not make any finding respecting whether or not the MPLT is an enforceable contract. As discussed infra, however, we find that it is not.
 {¶ 23} The trial court observed that, "[n]owhere in the Complaint or Plaintiffs' Memorandum Contra is there any recitation to any specific provision of the MPLT that Plaintiffs claim Defendant breached."[2] The trial court further noted that the factual allegations forming the basis of the claim in Count I are the same factual allegations forming the basis of Count II. Specifically, in Count I, appellants allege that appellee breached the MPLT "by failing to invest the assets of the MPLT, review the investments of the MPLT, and manage the assets of the MPLT in a manner consistent with the purpose of the MPLT and defendant's duties under the MPLT." In Count II, appellants allege that appellee "breached its fiduciary duties by failing to exercise reasonable prudence and diligence in investing, disposing, reviewing and managing the assets of the MPLT, and by permitting the waste of said assets." The trial court found that, "these counts are one and the same, a claim for breach of fiduciary duty."[3]
 {¶ 24} The court further found that all of appellants' claims are analogous to a professional malpractice claim, in that they involve allegations of a defendant in whom special confidence and trust was reposed, and who allegedly failed to perform services called for within that relationship in a manner consistent with the heightened duties inherent in the relationship. Thus, the court found that the claims in all three counts of the complaint were claims for breach of fiduciary duty.
 {¶ 25} On appeal, appellants argue that the allegations in Count I clearly state a claim that the MPLT imposed contractual duties upon appellee, and that appellee breached the terms of the MPLT. Upon our review of the allegations contained in Count I of the complaint we find that, therein, appellants charge appellee not with breach of a contractual provision but with violation of the duties that issue from the intrinsic nature of the relationship of trust and care created by the MPLT. Nowhere in the MPLT does appellee "agree" to do or not to do a certain thing, such that it could be charged with breach of contract for doing or failing to do an act. This illustrates the equitable (not contractual) nature of the duties involved when a trust is created.
 {¶ 26} "A trust is the right, enforceable in equity, to the beneficial enjoyment of property, the legal title to which is in another." Petersonv. Teodosio (1973), 34 Ohio St.2d 161, 168, 297 N.E.2d 113, quoting Ulmerv. Fulton (1935), 129 Ohio St. 323, 339, 195 N.E. 557. Described another way, a trust is, "a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held toequitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it." Restatement of the Law 2d, Trusts (1959), 6, Section 2. (Emphasis added.) A trustee's duties emanate from the nature of the trust, not from any specific contractual language resulting from a contract-like "meeting of the minds" and imposing legal duties to perform certain acts.
 {¶ 27} A trustee who fails to perform his duties as a trustee is not liable to the beneficiary for breach of contract because the creation of a trust is "a conveyance of the beneficial interest in the trust property rather than a contract." Id. at 433-434, Section 197, Comment b. By accepting the trust and agreeing to perform the duties imposed thereby, the trustee does not make a contract enforceable at law. Ibid. If the trustee fails to perform his duties as a trustee this is known as a "breach of trust" rather than a breach of contract. Restatement of the Law 2d, Trusts (1959), 442, Section 201. Because a cause of action for breach of contract does not lie against a trustee alleged to have fallen below the standard of care required of it as trustee, the trial court was correct in rejecting appellants' argument that Count I sounds in breach of contract and is subject to the 15-year limitations period for breach of contract claims found in R.C. 2305.06.
 {¶ 28} The duties of a trustee include the duty to administer the trust and not delegate that task to another, the duty of loyalty requiring the trustee to administer the trust solely in the interest of the beneficiaries, and the duty to exercise reasonable care and skill in administering the trust and preserving the trust property. See, generally, Restatement of the Law 2d, Trusts (1959), Sections 169-177. The standard of care and skill required of a trustee in administering the trust and in preserving the trust property is the objective standard of a reasonable person in dealing with his or her own property. See id. at Sections 174 and 176.
 {¶ 29} When a trustee, through acts or omissions, falls below the required standard of care and negligently manages the trust property, an aggrieved beneficiary may pursue an action to recover the loss or depreciation in value of the trust estate resulting from the breach of trust. Restatement of the Law 2d, Trusts (1959), 458, Section 205. Even though such an action is based upon what was originally a fundamentally equitable interest and equitable duties, the Supreme Court of Ohio has held that, if brought after the termination of the trust, it is an action sounding in tort; that is, an action at law subject to the statute of limitations for such tort actions. State ex rel. Lien v. House (1944),144 Ohio St. 238, 247, 58 N.E.2d 675. The court in State ex rel. Lien
held that the cause of action for tortious breach of trust accrues, in the absence of undiscovered fraud, when the trusteeship terminates as to the defendant trustee. Id. at paragraph two of the syllabus. The court further held that the four-year limitations period found in the predecessor to R.C. 2305.09[4] applies to such actions. Ibid.
 {¶ 30} In the present case, Counts I, II and III of the complaint are premised upon allegations of negligent management of the life insurance policies that served as the sole means of funding the MPLT. The complaint does not allege fraud. Thus, the claims in Counts I, II and III are tort claims for breach of trust and are subject to the four-year limitations period in R.C. 2305.09. The clear guidance that the Supreme Court of Ohio provided in State ex rel. Lien obviates the need for this court, as the trial court did, to analogize the allegations in this case to those charging legal malpractice. However, the trial court ultimately reached the correct conclusion with respect to which statute of limitations applies to appellants' claims. The applicable period of limitations is four years, pursuant to R.C. 2305.09.
 {¶ 31} As an adjunct to their primary argument in support of their second assignment of error, appellants argue that their cause of action has not yet accrued because: (1) appellee still holds $50 conveyed to appellee as trustee by Alice Cassner at the time the trust was created, and (2) appellee has never unequivocally repudiated the MPLT and, as such, the "relationship" between appellants and appellee is ongoing. They argue that appellee's alleged retention of the $50 deposit and its supposed failure to renounce the MPLT and the trust res render the trust to be continuing and subsisting and, as a result, not subject to any otherwise applicable statute of limitations, pursuant to R.C. 2305.22.
 {¶ 32} The record reflects that appellants did not raise, in their memorandum contra to appellee's motion for summary judgment, the issue of Alice Cassner having conveyed $50 to appellee at the time she and appellee executed the MPLT. At all previous stages of this litigation appellants have alleged that the MPLT was funded with two universal life policies; they have never, prior to the filing of their brief on appeal, alleged or argued that cash may also be part of the trust res entrusted to the care of appellee. The record further reflects that appellants did not argue, in the trial court, that the MPLT is continuing and subsisting due to appellee's continuation of its duties and failure to unequivocally repudiate the trust. Ordinarily, reviewing courts do not consider questions not presented to the court whose judgment is sought to be reversed." State ex rel. Quarto Mining Co. v. Foreman (1997),79 Ohio St.3d 78, 81, 679 N.E.2d 706, quoting Goldberg v. Indus. Comm.
(1936), 131 Ohio St. 399, 404, 3 N.E.2d 364. We, therefore, decline to address these issues, which were not presented to or passed upon by the trial court.
 {¶ 33} We must address, however, the trial court's conclusion that appellants' cause of action for tortious breach of trust (denominated by the trial court as, simply, breach of fiduciary duty) accrued at the time appellants' interest was first impaired by appellee's alleged breach — in this case, at a time during which appellee still held legal title to the trust property. We disagree with this conclusion.
 {¶ 34} The apposite concept was succinctly set forth by the Supreme Court of Ohio in State ex rel. Lien v. House, supra, as follows:
An action against trustees of an express trust for loss of funds arising from a breach of trust involving tortious conduct such as bad faith, negligence and double-dealing, is one at law, the cause of action accrues, in the absence of undiscovered fraud, when the trusteeship as to such trustees is terminated, and the action is barred in four years by virtue of the provisions of Section 11224, General Code [now R.C. 2305.09].
Id. at paragraph two of the syllabus.
 {¶ 35} In keeping with this precedent, we find that the trial court erred in applying to appellants' claims the cause-of-action accrual date applicable to ordinary, non-trust-related breaches of fiduciary duty. Though this may at first appear to be a distinction without a difference, it is necessary to illustrate that the limitations period for claims which are premised upon tortious conduct committed while the defendant was acting as trustee, but which are brought after the trust has terminated, will not begin to run until the trustee has terminated the trust and parted with control of the trust res.
 {¶ 36} In this case, the trial court relied on cases involving breaches of fiduciary duty not involving express trusts, and determined that appellants' claims accrued at the time their interest was impaired by appellee's breach. This is an accurate statement of the law in cases involving non-trust-related breaches of fiduciary duty. See Kunz v.Buckeye Union Ins. Co. (1982), 1 Ohio St.3d 79, 437 N.E.2d 1194.
 {¶ 37} However, in determining the accrual date for a cause of action for tortious breach of trust brought after termination of the trust, consideration must be given to the view Ohio courts have historically taken that there is a difference between actions to enforce a trust whileit remains viable, and actions to redress a breach of trust after thetrust has terminated. The statute of limitations on a claim for breach of fiduciary duty premised upon a tortious breach of trust will not begin to run while the trustee continues to exercise any of his powers over the trust res. See State ex rel. Lien, supra; Peterson v. Teodosio (1973),34 Ohio St.2d 161, 168, 297 N.E.2d 113. However, once the trustee has disclaimed or repudiated his trust obligation and the same becomes known to the beneficiary, the cause of action for tortious breach of trust arises, and the statute of limitations will begin to run in the trustee's favor. Peterson, supra, at 169.
 {¶ 38} The rationale for such a distinction appears to be founded on the notion that, so long as the trustee continues to exercise his powers, not only might the trustee be able to correct or remedy the impairment through the further exercise of such powers, but also that the beneficiary has far less reason to know of any breach, and any deleterious consequences thereof, during the administration of the trust than he does after the trust has terminated and the trust res has been surrendered to him.
 {¶ 39} These concepts are embodied within R.C. 2305.22, which excepts "continuing and subsisting trusts" from the effect of otherwise applicable statutes of limitations. This exception is, "rooted in the rules of courts of equity, developed prior to adoption of the Code [of Civil Procedure], as to the application in equitable actions involving trusts and the statutes of limitation which statutes, by their terms, applied only to actions at law. * * * The `continuing and subsisting trust' exception was simply a statutory incorporation of such prior existing rules." Peterson, supra, at 167. (Citations omitted.)
 {¶ 40} The Peterson court further explained:
The rule developed by equity courts was that in suits between a cestuique trust[5] and a trustee for the enforcement of a trust that was a continuing technical trust not recognized at law but within the proper, peculiar and exclusive jurisdiction of equity, where the trust was being respected by the trustee, no statute of limitation could be interposed by the trustee as a defense.
* * *
Since the nonapplicability of the statutes of limitation rule rested upon the holding of the trustee to be the holding of the cestui quetrust, the concomitant rule was that upon a disclaimer or repudiation of his trust obligation by a trustee, known to the cestui que trust, the holding was thenceforth adverse, a cause of action arose and the statutes of limitation were available to the trustee as a defense.
Id. at 168-169. (Emphasis sic.) (Citations omitted.)
 {¶ 41} In the present case, the trial court found that appellants' cause of action accrued at the moment of the alleged breach, citingStokes v. Berick (Dec. 23, 1999), 11th Dist. No. 98-L-094, a case in which the Eleventh Appellate District likewise treated a breach of trust claim based upon tortious conduct as a traditional claim for breach of fiduciary duty for purposes of fixing the date the cause of action accrued. Relying on Stokes and Kunz v. Buckeye Union Ins. Co. (1982),1 Ohio St.3d 79, 437 N.E.2d 1194, the trial court here found that appellants' cause of action accrued at the time of appellee's breach. Thus, the trial court concluded that only breaches that occurred within the four years immediately preceding the filing of appellants' original complaint were not time-barred.
 {¶ 42} In so doing, the trial court treated this tortious breach of trust claim brought after the termination of the trust in the same manner as the courts treat non-trust-related claims for breach of fiduciary duty. To do so, and to thus find that the limitations period in such cases begins to run as of the moment the beneficiary's interest is first impaired by the breach (which will, in many cases, occur during the active administration of the trust but without the beneficiary's knowledge), contradicts the holding of the Supreme Court of Ohio in Stateex rel. Lien, supra. In that case, as noted infra, the court held that the cause of action for breach of trust founded upon tortious conduct does not accrue until the trust has unequivocally terminated.
 {¶ 43} To hold that the cause of action for tortious breach of trust accrues as of the moment the beneficiary's interest is impaired fails to yield to the long-standing and sound view taken by Ohio courts that the beneficiary cannot be expected to act to obtain redress for damages suffered as a result of a trustee's tortious conduct in violation of the trust, until the trustee has ceased exercise of his powers, made known this fact to the beneficiary and surrendered the trust res.
 {¶ 44} We adhere to the principle enunciated in the syllabus of Stateex rel. Lien, supra. Accordingly, we hold that appellants' claims in Counts I, II and III of the complaint are claims for tortious breach of trust that fit squarely within the second paragraph thereof. Thus, appellants' cause of action did not accrue until appellee's trusteeship terminated. We find, based upon the evidence of record, and construing the same in a light most favorable to appellants, that appellee's trusteeship terminated on August 28, 1998, the date upon which appellee transferred ownership of the universal life policies to appellants. This is the date upon which appellants' cause of action for breach of trust accrued. Pursuant to R.C. 2305.09, appellants had four years from this date in order to bring their claims. The record reflects that appellants filed their original complaint on April 13, 2001, well within this period.
 {¶ 45} In summary, the trial court correctly determined that Count I does not state a cause of action for breach of contract, and that R.C.2305.09 applies to all of appellants' claims. However, the trial court erred in finding that appellants' cause of action accrued at the time of the first breach. We further hold that appellants' claims were timely brought and are not barred by the operation of R.C. 2305.09.
 {¶ 46} Because the trial court found that appellants' cause of action accrued at the time their interest was first impaired by appellee's breach (and, apparently, viewed the breach and the impairment as having happened simultaneously), the trial court worked backwards from the filing date, found no evidence of breaches having occurred during that time period, and thus found no causal connection between appellants' damages and any breaches committed by appellee. It was on this basis, ultimately, that the trial court granted summary judgment in appellee's favor.
 {¶ 47} Because we find that appellants' cause of action accrued at the termination of the trust, and that their complaint was timely filed, we cannot say, on the evidence of record, whether or not there is a genuine issue of material fact as to the existence of a causal connection between appellants' damages and any breach committed by appellee. Accordingly, we find appellee is not entitled to summary judgment.
 {¶ 48} In their third assignment of error, appellants argue that the trial court should have applied a "delayed damages" theory or "discovery rule" to the facts of this case. In seeking such an application in the trial court and on appeal, appellants sought a finding that, although ordinarily their cause of action may have accrued at the time of appellee's breach, because they were not aware until much later that their interests had been impaired, the running of the statute of limitations should be tolled until that time. Because our resolution of appellants' second assignment of error accomplishes this result, albeit upon a wholly different basis, we perceive no need to address the applicability of a discovery rule or a theory of delayed damages, concepts typically applied in cases not involving claims for breach of trust. Accordingly, we overrule appellants' third assignment of error as moot.
 {¶ 49} For all of the foregoing reasons, appellants' first assignment of error is overruled, the second assignment of error is sustained in part and overruled in part, and the third assignment of error is overruled as moot. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to that court for further proceedings.
Judgment affirmed in part, reversed in part and cause remanded.
Bowman and Watson, JJ., concur.
[1] Brief of appellants, at 23.
[2] October 3, 2003 Decision Granting Summary Judgment, at 8-9.
[3] Id. at 9.
[4] The statute involved in State ex rel. Lien was G.C. 11224, which was replaced by R.C. 2305.09 with the adoption of the Ohio Revised Code in 1953.
[5] This term refers to the beneficiary of the trust. Williams, Learning the Law 10 (11 Ed. 1982).